ONEIDA NATIONAL BANK AND TRUST COMPANY OF CENTRAL NEW YORK et al., Appellants, v. VALENTINA UNCZUR, Respondent.

Fourth Department, December 2, 1971.

*Cook & Ringrose* (*Frank S. Cook* of counsel), for Oneida National Bank, appellant.

*Francis P. Valone* for Eugene Peterpaul and another, appellants.

*John B. Cosgrove* for respondent.

*Richard Frye, County Attorney.*

WITMER, J. The Oneida National Bank and Trust Company of Central New York (Bank) and Eugene Peterpaul and Domenick Bravo appeal from an order of Special Term vacating a default judgment in the sum of $594.43 entered by the Bank against respondent Valentina V. Unczur on March 17, 1967 and also vacating and setting aside the sheriff's deed of respondent's real property conveying her home to appellants Peterpaul and Bravo in November, 1968 under an execution issued by the Bank for the sale of the property to satisfy the judgment.

Two or three days after the purchasers received and recorded the deed to respondent's property which they purchased upon the execution sale, their attorney notified respondent thereof and requested that she vacate the premises. Upon receiving such notice respondent immediately instituted this proceeding by order to show cause for an order to vacate and set aside both the default judgment and the execution sale thereunder. Upon that application Special Term entered the order from which the Bank and the purchasers appeal.

It appears that on May 3, 1965 respondent had borrowed money from the bank to enable her to purchase an automobile, and she gave to the Bank as evidence of the debt a retail installment note in the amount of $1,131.92, providing for monthly payments. On August 18, 1966 at the instance of a health officer of the City of Rome, New York, respondent was admitted to the Marcy State Hospital, an institution for the mentally ill. Six days later the Bank instituted suit against respondent for the balance due on the note, alleging that she had paid $707.40 thereon and still owed $424.52, plus 25% thereof or $106.03 for attorney's fees in bringing the action to collect it, as provided in the note, making a balance owing of $530.62. Respon-

dent was served with a summons and complaint in the hospital without compliance by the Bank or the hospital authorities with the rules and regulations applicable with respect to service of papers upon patients in mental hospitals (14 NYCRR 15.0 and 22.1, established under Mental Hygiene Law, § 12, subd. 4), which provide that service of a summons and complaint upon such a patient shall not be permitted except upon order of a Judge of a court of record. The Bank knew that respondent was served in the hospital, and under date of October 26, 1966 it received acknowledgment of such service from an Assistant State Attorney-General who wrote, "I assume a guardian ad litem will be appointed by the Court if it deems such action is necessary". On November 25, 1966 respondent was released from the hospital, but she continued as an out-patient thereof until January 31, 1968 when she was discharged.

Upon this application it appears without contradiction that throughout the time respondent was in Marcy State Hospital she was virtually in a stupor and unable to grasp her business affairs. Without bringing this situation to the attention of the court as suggested by the Assistant Attorney-General, the Bank on March 17, 1967 entered a default judgment against respondent in the sum of $594.43.

Thereafter, apparently in connection with an effort to collect the judgment, the Bank's attorneys notified the Attorney-General on April 25, 1967 of the entry of the judgment, and his office replied in May that the Department of Mental Hygiene would not apply for an appointment of a committee for respondent since she had been placed on convalescent care as of March 13, 1967.

Respondent's sister attempted without success to have the Bank make a loan on respondent's property so that it could be made income-producing. In her affidavit in support of this application she states that had she known that the Bank contemplated executing upon this property to satisfy the judgment she would have paid the judgment; and that she believes that she had made that known to the Bank. The Bank has not denied this. Nevertheless, the Bank thereafter issued an execution under the judgment, and respondent's property was sold as above stated.

The sale price was $850, sufficient to satisfy the judgment. An affidavit by a real estate broker attached to the moving papers states that the fair market value of the property was $9,000. It was free and clear except for a tax bill of $176.84.

The basis of respondent's application herein is that under these circumstances the court failed to obtain jurisdiction of her and to protect her interests as provided by law. The record

supports her contention; and in view of the egregious financial loss resulting to respondent, the determination by Special Term was clearly appropriate.

To vacate a default judgment the judgment debtor is generally required to show not only a just cause for his default, which appears in this case, but also to show a meritorious defense to the action (*Montmarte, Inc.* v. *Salvation Army,* 20 A D 2d 536). Respondent does not deny that she owed the money for which judgment was entered. Because of her mental condition at the time the action was brought, however, and the failure of the Bank to follow procedures of the Department of Mental Hygiene upon service of the summons and complaint upon her, to enable the court to protect her interests, she asserts that the judgment is a nullity and that it should be vacated (CPLR 5015, subd. [a], par. 4). In the interest of justice undoubtedly the court has inherent power to open its judgments (*Ladd* v. *Stevenson,* 112 N. Y. 325, 332; *Matter of Mento,* 33 A D 2d 650). Had the Bank and the Marcy State Hospital authorities complied with the State rules and regulations for the service of a summons and complaint upon a mental hospital patient (14 NYCRR 22.1) the court presumably would have arranged for the appointment of a guardian ad litem for respondent to protect her interests. At least, the court would have made inquiry to ascertain her mental condition and ability to protect her own interests. Circumvention of such rules should not be permitted to work to respondent's prejudice.

CPLR 1203 provides in part: "No default judgment may be entered against an adult incapable of adequately protecting his rights for whom a guardian ad litem has been appointed unless twenty days have expired since the appointment."

CPLR 1201 provides for the manner in which an infant or incapable adult may appear in an action against him. It provides in part: "A person shall appear by his guardian ad litem if he is an infant * * * or if he is an adult incapable of adequately prosecuting or defending his rights."

The two quoted statutory provisions are to be read together and interpreted as requiring the appointment of a guardian ad litem in every case where the defendant is an adult incapable of adequately protecting his rights, before a default judgment may be entered against him. With respect to infant defendants for whom no guardian ad litem has been appointed, the courts have long held that no jurisdiction was acquired and that judgments obtained in such actions are void (see *Ingersoll* v. *Mangam,* 84 N. Y. 622; *State Bank of Albany* v. *Murray,* 27 A D 2d 627). The same rule should be applied with respect to an adult incompetent

(see *Rakiecki* v. *Ferenc,* 21 A D 2d 741). This places the burden upon a plaintiff who has notice that a defendant in his action is under mental disability, to bring that fact to the court's attention and permit the court to determine whether a guardian ad litem should be appointed to protect such defendant's interests. For failure of the Bank to employ such procedure to safeguard the interests of its mentally ill debtor, we hold that Special Term properly vacated the default judgment and the execution sale of respondent's home thereunder. This will place all parties in the same position which they occupied prior to entry of the default judgment; and respondent should have 20 days after entry of order hereon in which to interpose an answer to the complaint.

It may well be that respondent has now been restored to mental health, but in view of the history of this action, if it is not otherwise disposed of and if respondent again defaults, the Bank should make application to the court to ascertain respondent's present condition and to determine whether an appointment of a guardian ad litem should now be made upon a renewed application for entry of default judgment, so that if such appointment is deemed appropriate, a guardian ad litem may determine whether an answer should be interposed for respondent in the action, and whether any other steps should be taken to protect respondent's interests.

MARSH, J. P., GABRIELLI, MOULE and CARDAMONE, JJ., concur.

Order unanimously affirmed with costs.