Daniel G. Albert, J.
These motions arise out of a surplus money proceeding which was conducted in order to determine the respective rights of the claimants to the surplus fund resulting from the foreclosure sale of the real property previously owned by the defendant Joseph E. Jones. Due to the apparent incompetency of Mr. Jones, who is presently a patient at a Veterans’ Administration Hospital in New York City, as well as the possibility of violations of section 489 of the Judiciary Law pertaining to champerty and maintenance, several interesting and novel questions have been raised which must be passed upon by the court at this juncture.
One of the claimants to the surplus moneys has moved to confirm the referee’s report which awarded the. entire fund to that claimant; another claimant, the United States Government, has cross-moved to disaffirm said report on several grounds, discussed below; and the guardian ad litem of the defendant Jones, appointed by the court on its own motion, has moved for various relief on behalf of the defendant, including disaffirmance of1 the referee’s report. The two earlier motions were held in abeyance pursuant to my order of October 21, 1971, pending the report and recommendation of said guardian, and the three motions will now be disposed of in accordance with the decision herein.
Pursuant to a judgment of foreclosure and sale, dated September 11, 1970, property located at 76 Steamboat Boad, Great Neck, New York, and owned by the defendant Joseph E. Jones was sold at public auction on October 23, 1970 to one Arthur A. Gladstone, who thereafter assigned his interest therein to Levi Jones, a brother of the defendant Joseph E. Jones. The sales price was $24,000. After payment to the plaintiff of the amount due on the mortgage and deduction of other expenses of foreclosure and sale, there remained a surplus of $12,360.06 which was deposited with the Nassau County Clerk to the credit of this action.
On May 28, 1971, on motion of the claimant Babinowitz, as assignee of various judgment creditors named as defendants in the foreclosure action, this court confirmed the report of the referee appointed to conduct the sale and also appointed *735 a referee to conduct a surplus money proceeding in order to ascertain and report the amounts due to the claimant Rabinowitz, if any, and any other claimants out of said surplus moneys.
In addition to the claimant Rabinowitz, who claimed under judgments exceeding the total value of the surplus money fund, the only other claimant appearing herein was the United States Government which asserted a lien predicated on an assessment, dated October 23, 1970, for $6,417.83 in unpaid income taxes.
Hearings were conducted by the referee on June 22, July 8 and July 15 of 1971. At those hearings, the sole witness was the claimant Rabinowitz. The referee consistently sustained objections by Rabinowitz’ attorney to questions put to Rabinowitz on cross-examination by the Assistant United States Attorney, appearing for the United States of America, who attempted, among other things, to elicit such information as:
1) by whom Rabinowitz was employed;
2) how much he had paid for various judgments against the defendant Jones which he had acquired by assignment;
3) whom Rabinowitz negotiated with in obtaining these judgments;
4) what was the source of funds used to purchase the judgments.
Rabinowitz acknowledged he was acting with others in this matter, but these “others” were never named.
The referee found that Rabinowitz held judgments totaling $12,475.22 which were prior to the United States Government’s lien of $6,674.51; that Rabinowitz had acquired the assignment of these judgments for the purpose of collecting the moneys due thereunder; and that there was no evidence of any violation of section 489 of the Judiciary Law.
The defendant Joseph E. Jones did not appear in the main foreclosure action or on these hearings in the surplus money proceeding. He was given notice thereof only by ordinary mail addressed to him at the location of1 the property which had been sold approximately eight months earlier in this same foreclosure action.
On the subsequent motions by the claimant Rabinowitz to confirm the referee’s report and by the United States of America to disaffirm said report, the attorney for the United States submitted to the court a letter or note from Dr. David Gurin stating: “Mr. Joseph Jones, a patient of mine for *736 many years, has been mentally incompetent for the past two years due high blood pressure, hardening of the arteries and senility.”
On the basis of this information, by order dated October 21, 1971, this court appointed a guardian ad litem for the defendant Joseph E. Jones pursuant to CPLR 1201 and 1202 (subd. [a]) and directed said guardian to investigate and ascertain “the capability of Joseph E. Jones to adequately prosecute or defend his rights” and to examine “all the facts and circumstances surrounding the foreclosure and surplus money proceedings herein to the extent that they have affected or may affect any rights of Joseph E. Jones.”
The investigation conducted by said guardian ad litem ascertained that the defendant Joseph E. Jones has befen a patient in the Veterans’ Administration Hospital at First Avenue and 24th Street in New York City since September 8, 1971; that the hospital’s “history” of the patient indicates he has been suffering a “memory loss for about 3% years”; that, at present, Mr. Jones’ condition is that he is “ confused and disoriented; his speech not relevant to situation; memory for remote and recent events markedly impaired.” In the opinion of the psychiatrists who examined him at the hospital on December 14, 1971, Mr. Jones is “incompetent to handle his affairs ’ ’ and the prognosis is ‘ ‘ nil for intellectual improvement.”
The guardian also ascertained that Mr. Jones has a daughter living in Boston and another relative or “next of kin” in the New York area, in addition ,to the brother Levi Jones whp apparently lives now in the residence which formed the subject of the foreclosure action herein.
As indicated, earlier, claimant Babinowitz, supported by a memorandum submitted by the referee, moves to confirm the referee’s report on the grounds that it is in all respects proper, that the above-described questions interposed on cross-examination were irrelevant and the objections thereto properly sustained, and that Jones had sufficient notice of the surplus money proceeding, his alleged incompetence notwithstanding. The claimant United States has cross-moved to disaffirm the referee’s report and to grant the government’s claim to the surplus moneys in the amount of $6,417.83 plus interest. In the alternative, it joins in the motion by the guardian ad litem which seeks an order of the court granting the following relief:
*737 1) disaffirming the report of the referee in the surplus money proceeding had herein;
2) staying any further proceedings by the claimants herein, or anyone claiming through, by or under them, to reach the surplus moneys being held in this action until entry of an order appointing a committee for the defendant Joseph E. Jones, or denying a petition for such appointment, pursuant to article 5-A of the Mental Hygiene Law;
3) staying the claimants herein, or anyone claiming through, by or under them, from instituting a proceeding under article 5-A of the Mental Hygiene Law to have the defendant Joseph E. Jones declared incompetent until six months after entry of the order hereon, and
4) discharging the guardian ad litem for the defendant Joseph E. Jones, fixing reasonable compensation for the services rendered and directing payment thereof by the County Treasurer out of the surplus moneys held to the credit of this action.
For all of the reasons indicated below, the report of the referee in the surplus money proceeding, dated July 29, 1971, is disaffirmed; a further reference will be made to recommend disposition of the surplus money fund, and a further hearing will be held by such referee in accordance with this decision; such hearing will not be conducted until appropriate incompetency proceedings have been completed or 90 days have expired from the entry of an order hereon, whichever occurs earlier; and the applications by the referee and the guardian ad litem for fees and disbursements will be granted to the extent indicated below.
The failure to give the defendant Joseph E. Jones adequate notice of the hearing before the referee in this surplus money proceeding and the referee’s refusal to permit inquiry into the circumstances by which Rabinowitz acquired the assignment of the several judgments require that the referee’s report be disaffirmed.
The evidence of Jones’ present mental incompetence and the likelihood that such condition predated the institution of this foreclosure action warrant the court, in the interest of justice and in the exercise of its discretion, to grant the request for a stay of proceedings herein to allow those interested in Jones’ welfare and the preservation of his estate, time and an opportunity to commence appropriate proceedings for the appointment of a committee.
*738 LACK OF PROPER NOTICE
The affidavit of service annexed to the notice of the time and place of the hearing to he conducted by the referee in this .surplus money proceeding recites that it was served on the defendant Joseph E. Jones by ordinary mail addressed to him at 76 Steamboat Road, Great Neck, New York.
As owner of .the equity of redemption, Jones was entitled to notice. Subdivision 3 of section 1361 of the Real Property Actions and Proceedings Law directs such notice be given “ by mail or in such other manner as the court shall direct ” (emphasis added). It is axiomatic that to accord with the requirements of due process, notice must be reasonably calculated to apprise the party served of1 the pendency of the proceeding and must afford him an opportunity to be heard (Mullane v. Central Hanover Trust Co., 339 U. S. 306; Milliken v. Meyer, 311 U. S. 457).
In the instant case, the party serving that notice knew that the address to which he sent the “notice” was the very property which had been foreclosed upon and sold at least eight months before mailing of the “Notice.”
It would seem that the provision in the statute for the court to fix the manner of giving notice to the owner of the equity of redemption was included for just .such instances as those disclosed herein. When the only address known for the owner of the equity of redemption is a “last known address,” that is, the address of the property sold pursuant to the judgment of foreclosure, the claimant should be required to seek court approval for an alternative method of service reasonably calculated, under the circumstances to reach the owner of the equity.
Indeed, what other purpose would there be for providing the manner of notice to be directed by the court, unless to explicitly provide the procedure to be followed when' service of notice by ordinary mail will be manifestly futile, as the situation herein indicates. The claimant Babinowitz argues in opposition to this conclusion that 1 ‘ the mailed notices were not returned .to the sender by the post office,” and that the premises “were owned at that time by Joseph E. Jones’ brother, Levi Jones,” and from these two assertions he concludes that “ the logical assumption must be made that the notices were received.” Non sequitur. The notice was sent by ordinary mail, not registered or certified with, receipt required, as may have been warranted, and there-is no reason to assume that it was received by the defendant simply because *739 it was not returned to the post office. An equally logical yet unfounded assumption would he that it ended up unopened in a waste basket, and rather than indulging in such speculative reasoning, the claimant should have applied to the court pursuant to 'Subdivision 3 of section 1361 of the Real Property Actions and Proceedings Law for the proper method to be used in directing notice of the surplus money hearing to the defendant herein. Furthermore, there is no evidence that the present owner of the premises, the defendant’s brother Levi Jones, has in any way acted in his brother’s behalf, and on the contrary, whatever indications there are suggest exactly the opposite. There has been no manifest attempt on the part of Levi Jones to protect his brother’s interest in the subject matter of this proceeding, and the court cannot idly speculate on whether Levi Jones received the letter notice addressed to his brother and notified the defendant thereof. Through the diligent efforts of the guardian ad litem appointed by the court for the benefit of the defendant, it has been ascertained that Joseph E. Jones is presently a mental patient at the Veterans’ Administration Hospital, First Avenue at East 24th Street, New York, New York 10010, and any further notices in this proceeding which must be served upon the defendant shall be directed to that hospital by certified mail, return receipt requested.
APPLICABILITY OF SECTION 489 OF THE JUDICIARY LAW
On the original motion to confirm the report of the referee, the attorney for the claimant Rabinowitz submitted a memorandum to. the court to support his contention that the referee correctly excluded inquiries into the circumstances of Rabinowitz’ acquisition of the judgments now in issue. The several cases cited in that memorandum in fact support the propriety of the questions put to Mr. Rabinowitz and excluded by the referee on objection of his attorney.
Section 489 of the Judiciary Law expressly prohibits any person or copartnership engaged directly or indirectly in the business of collection or adjustment of claims or any corporation or association from, directly or indirectly, soliciting, buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon. The statute makes such conduct punishable as a misdemeanor.
The institution of this surplus money proceeding is the commencement of a special proceeding and a special proceeding is *740 an action both within the meaning of our practice acts (CPLR 103) and within the meaning of section 489 of the Judiciary Law. This was clearly enunciated by the Appellate Division in Matter of Lobbett v. Galpin (228 App. Div. 65, 67): “A proceeding after a mortgage foreclosure to distribute surplus moneys is a special proceeding. (Velleman v. Rohrig, 193 N. Y. 439: House v. Amsdell Brewing & Malting Co., 133 App. Div. 486, 488.)”
Furthermore, the general trend of the decisions interpreting section 489 indicates that the words “ other thing in action” may under certain circumstances include a judgment, the type of “thing in action” which the claimant Rabinowitz is attempting to assert against the surplus money fund by the institution of this surplus money proceeding. As far back as the case of Fay v. Hebbard (42 Hun 490, 492 [1886]) the Appellate Division, First Department, ruled as follows: “If an attorney or counselor buys a judgment with intent to sue the judgment debtor thereon, we think it would be deemed ‘ a thing in action ’ within the meaning of the provision [Code Civ. Pro., § 73, the forerunner of Judiciary Law, § 488]. It would be within the spirit of the law and the mischief to be prevented”. This interpretation of the companion statute to section 489 was recently relied upon in regard to the latter statute in People v. Berlin (65 Misc 2d 245, 249), wherein the court refused to dismiss an indictment for violation of section 489 based upon the purchase of a judgment: “Essentially, [in Fay v. Hebbard] the words ‘ or other thing in action ’ were construed not to include a judgment where it was purchased by an attorney for the purpose of enforcing its collection or pursuing its lien * * * It would, however, appear from Fay v. Hebbard (supra), that a judgment ,so purchased for the purpose of instituting an action thereon * * * is such ‘ other thing in action ’ which, within the meaning and intent of the statute, is the subject matter of a forbidden transaction.” (See, also, the companion case of People v. Berlin, 66 Misc 2d 1034; see Rosenkrantz v. Salvo Realty Corp., 65 Misc 2d 467.) For an informative discussion of. the type of malpractices proscribed by section 489, see generally Mr. Justice Lynde’s opinion in Lee v. Community Capital Corp. (67 Misc 2d 699).
Accordingly, it is the decision of this court that the institution of a surplus money proceeding based upon judgments assigned to the claimant falls within the provisions of section 489 of the Judiciary Law which prohibits, under certain stated *741 conditions, the assignment -of a thing in action for the purpose of instituting a proceeding thereon. It would he proper, therefore, to allow cross-examination of such claimant in the .surplus money proceeding in order to ascertain whether the judgments were obtained in violation of the statute, thereby rendering them invalid.
The assertion by the referee that she was not authorized in a surplus money proceeding to declare the judgments or their assignments invalid is incorrect. It is an equitable proceeding in which the referee is clothed with broad discretion to insure that equity and justice are rendered to all parties, especially including but certainly not limited to the apparently incompetent defendant, Joseph E. Jones. “ The powers of a referee in a surplus money proceeding are very broad. He can take evidence and investigate any legal or equitable question pertaining to the issue. He is required to find facts and conclusions of law. (Baker v. Baker, 70 Hun, 95.) He may exercise an authority as extensive as the claims themsblves, and the legal and equitable objections that may be made to their allowance. (Kingsland v. Chetwood, 39 Hun, 602.) ” (Matter of Lobbett v. Galpin, 228 App. Div. 65, 68; (emphasis added.)
In the present proceeding, the claim of Rabinowitz exceeds the total .surplus money fund, and thus for the government to collect any of its approximately $6,000 claim it must seek to invalidate the other larger claim. This it is entitled to do, within the bounds of proper cross-examination, and this it was precluded from doing by the referee’s constant sustaining of the objections raised by the attorney for Rabinowitz to such cross-examination interrogation.
In Fairchild Hiller Corp. v. McDonnell Douglas Corp. (28 N Y 2d 325 [1971]), relied upon by the claimant Rabinowitz, the Court of Appeals held that the plaintiff assignee’s acquisition of a claim against the defendant for allegedly supplying Republic Aviation Corporation with defective tools and plans for the F-4 -jet fighter-bomber was not champertous or violative of section 489 of the Judiciary Law where such assignment was “ an incidental part of a substantial commercial transaction.” In so deciding, however, the court noted that the facts in that case were virtually undisputed, and established by extensive pretrial discovery. The court indicated that ordinarily the question of the intent and purpose of the purchaser or assignee is a factual one to be decided by the trier of the facts. (See, also, Sprung v. Jaffe, 3 N Y 2d 539 [1957]; *742 Carpenter v. Cummings, 20 Misc. 661 [1897]; 14 C. J. S., Champerty and Maintenance, § 49, p. 388.)
The question -of the purchaser’s intent and purpose is, therefore, clearly relevant under the decision in Fairchild Hiller (supra), and the referee’s ruling that questions aimed at establishing that intent and purpose were “irrelevant” was manifestly erroneous.
Similarly, in Inland Credit Corp. v. Puro (27 A D 2d 706), the payee of an installment promissory note executed by the payee’s brother transferred it by indorsement to plaintiff the day before the first installment was due. The note was thereafter dishonored. When plaintiff sued the maker and moved for -summary judgment, its motion was denied, principally on the ground that there was a triable issue of fact concerning a claimed violation -of -section 275 of the Penal Law, the predecessor of section 489 of the Judiciary Law. When the payee in that action reacquired the note and brought a separate action against the maker in Nassau County, Special Term’s grant of his motion for summary judgment was reversed by the Appellate Division, Second Department, on the .same grounds as the First Department had relied on in the action by the assignee. (Puro v. Puro, 31 A D 2d 837.) Most pertinent to the issue now at bar in the instant case is the Appellate Division’s pronouncement that: “The relationship between Inland and plaintiff and the details of the transactions between them are known only to them and should he exposed under cross-examination ” (Puro v. Puro, supra, p. 838; emphasis added).
It was just such cross-examination that the referee refused to permit in the -surplus money proceeding herein. The questions put to Rabinowitz were, in view of the statute and the foregoing decisions, clearly relevant and it was prejudicial error for the referee to disallow the inquiry into the circumstances under which Rabinowitz acquired the judgments which form the basis of -his claim.
For all these reasons the report of the referee recommending the award of the entire surplus money fund to the claimant Rabinowitz must be disaffirmed and a new reference must be had -so that the defendant Jones may receive adequate notice of -such proceeding and so that the circumstances surrounding the assignment of the judgments to Rabinowitz, as well as his intent and that of the “ others ” with whom he was associated, may be investigated.
*743 defendant’s apparent incompetency
But how can Jones’ rights, if any, be adequately protected if he is mentally incompetent, as seems to be the case?
In his affidavit in support of his motion to disaffirm, the guardian ad litem has indicated the thoroughness of his investigation into the condition of Jones’ mental health and the opinions and findings of those doctors who have treated the defendant in the recent past:
“ I also conferred by telephone with Dr. David Gurin, of 4 Grosvenor Place, Great Neck, New York. Dr. Gurin confirmed that he had served as Mr. Jones’ physician for several years and stated that, for the past two years or more, Jones was, in his opinion, unable to remember the day to day details of his business transactions and was, during this period, ‘ mentally incompetent. ’ It will be recalled that it was a note from Dr. Gurin, submitted in connection with the pending cross-motion to disaffirm the report of the referee herein, which prompted the Court to appoint the undersigned as guardian ad litem for Mr. Jones. That note stated: 1 Mr. Joseph Jones, a patient of mine for many years, has been mentally incompetent for the past two years due to high blood pressure, hardening of the arteries and senility.’
“ In his conversation with me, Dr. Gurin confirmed the foregoing as his medical opinion. * * * I finally succeeded in speaking with Levi Jones by telephone. He told me his brother was a patient at the VA hospital located at First Avenue and 24th Street in New York City and that, to his knowledge, Joseph E. Jones was being treated for £ loss of1 memory.’ With this information * * * I was able to reach Mr. Jones’ treating physician at the VA hospital, a Dr. Marmell.
‘ ‘ In two telephone conversations, Dr. Marmell advised me that Jones, presently 65 years of age, has been a patient in the VA hospital since September 8, 1971. He is diagnosed as suffering from an ‘ organic mental syndrome ’ and has no memory for current matters. Dr. Marmell characterized Jones’ condition in laymen’s terms, as £ very severe senility ’.' Jones’ intellect is too damaged to understand or remember anything current. Dr. Marmell also stated that, in his opinion, Jones’ condition is permanent and irreversible. Jones was a patient before Dr. Marmell arrived at the hospital, and the doctor indicated he had been told by other physicians on the hospital staff that Jones had been suffering the symptoms ‘ quite some time ’ and that the hospital’s records indicate Jones was admitted with a note from Dr. Gurin that he was *744 suffering a ‘ marked loss of memory ’ due to an ‘ undiagnosed neurological syndrome \ Dr. Marmell also stated that Jones is ambulatory but the treatment being rendered him is solely for maintenance, not for purposes of, or with a view toward, rehabilitation.
“ Upon written application to John Y. Sheehan, the Director of the YA hospital in which Jones is a patient, I obtained a written report summarizing the hospital’s records in his case. A copy thereof,- dated February 9, 1972, and received by me on February 11, 1972, is annexed hereto as Exhibit A. Deserving of special note therein are:
“ The history of memory loss indicating its duration for about 3% years;
“ The results of a psychiatric consultation as recently as December 14, 1971, indicating that Jones ‘ appeared confused and disoriented; his speech not relevant to situation; memory for remote and recent events markedly impaired, ’ and the psychiatrist’s conclusion that Jones’ condition ‘ renders him incompetent to handle his affairs ’;
‘ ‘ The prognosis: ‘ Nil for improvement of intellectual function.’
‘1 The nature of the treatment being rendered to him: ‘ Merely maintenance. ’ ”
The claimant Rabinowitz attacks the foregoing as ‘ ‘ unsworn statements that Mr. Jones is presently incompetent to handle his affairs.” Irrespective of such characterization and regardless of whether such hearsay would be admissible as evidence at a trial, it certainly is sufficient to alert the court that Jones may be incompetent and may need the appointment of a committee in order to adequately protect whatever interest he may have in the surplus money fund. How can the court proceed further with this matter when it is reliably called to its attention -that the defendant herein, who has defaulted throughout the surplus money proceeding, is mentally incompetent to handle his affairs, that he suffers from a “marked loss of memory” due to an “undiagnosed neurological syndrome”, that he is afflicted with “very severe senility”? The possible existence of such mental aberrations cipes out for this court to safeguard Jones’ interests in this proceeding, and accordingly, a stay must be granted to afford Jones due process of law and an opportunity to be meaningfully represented herein.
By virtue of this foreclosure action and a prior one brought by the same plaintiff against other property previously owned *745 by the same Joseph E. Jones, Mr. Jones has lost a substantial portion of his estate. His condition and the serious legal questions raised regarding the conduct of this proceeding suggest that a committee, with the powers and resources available to such a representative, may indeed be able to establish a defense not only to the claim of the claimant Rabinowitz but also to the claim of the United States for unpaid taxes. Nothing in the record herein makes possible any determination as to the merits of the latter claim.
Similarly, there may be infirmities in the processes of the foreclosure action itself that are not readily apparent. Since Jones appears to be permanently incapacitated, the appointment of a committee seems the appropriate procedure for protecting his interests and his estate. He has a daughter in Boston and other close relatives who, when notified of1 this proceeding, may obtain legal advice and commence appropriate incompetency proceedings. If they fail to do so within the period allowed herein, the claimants have such remedy available to them.
The claimants will not be prejudiced by this relief. The fund is secure and, if they ultimately prevail, it will be there to satisfy their claims to the same extent as it is presently available, less any allowable fees and disbursements. Jones is, however, entitled to due process in the adjudication of those claims, and the stay requested herein will assist him in obtaining proper representation in this proceeding.
corrcLTJSioisr
As indicated above, the report of the referee herein is dis-affirmed, and the order to be submitted hereon shall provide for the appointment of a referee to conduct a further hearing, in accordance with the principles set out in this decision and upon notice to the defendant as indicated, but the conduct of such hearing shall be stayed pending the occurrence of the earliest of the following events: 1) the appointment of a committee to represent the defendant as a .result of his incompetency ; 2) the denial of a petition for 'Such relief; or 3) the passage of 90 days from the date of entry of the order hereon. Claimants shall be stayed from instituting incompetency proceedings for a period of 45 days from the date of entry of an order hereon, during which time the guardian ad litem of the defendant will apprise those next of kin of Jones of this decision and inform them of their exclusive opportunity to institute incompetency proceedings in regard to this matter within said 45-day period. Thereafter such proceedings may *746 be instituted by any qualified individual, including the claimants herein. Upon the expiration of 90 days from the date of entry of an order hereon without the commencement of incompetency proceedings, the further hearing in this surplus money proceeding shall proceed forthwith upon proper notice to all concerned.
The application by the referee to fix her fee is granted to the extent of awarding her a fee for her services in the amount of $350* plus allowable stenographic disbursements in the amount of $150.20. The application by the guardian ad litem to determine the fee for his services is granted to the extent of awarding him a fee in the amount of $500. Except as otherwise set out above, both the referee and the guardian ad litem are discharged from any further duties in this matter.
In all other respects, the motions by the claimants and the guardian ad litem are denied.