MICHAEL BARONE, Respondent, v KEVIN COX, as Administrator C. T. A. of Estate of Lillian D. Pierce, Deceased, Appellant.

Fourth Department, February 20, 1976

*Offermann, Fallon, Mahoney & Cassano (Leo J. Fallon* of counsel), for appellant.

*Eugene C. Tenney* for respondent.

WITMER, J. On this appeal from an order denying a motion to vacate a default judgment we are again called upon to state the duty of a creditor upon suing and entering judgment against an alleged debtor who the creditor knows or has reason to believe is incapable of protecting her interests. The judgment, in the sum of $10,034, was entered on June 11,

1970 against Lillian D. Pierce, defendant, who died on December 26, 1972. The Public Administrator for Erie County, Kevin D. Cox, was appointed administrator *c.t.a.* of her estate, apparently in early 1975, and he promptly moved to vacate the judgment.

The motion was supported by affidavits by Kevin D. Cox and Edna Y. McCurdy, defendant's daughter. It appears that defendant's heirs are Mrs. McCurdy and a grandson and three granddaughters, and that the only asset left by the deceased defendant is a residence property at 49 Haviland Place in Hamburg, New York, occupied by Mrs. McCurdy and her husband.

Mrs. McCurdy avers that prior to 1965 the plaintiff had invested money in a business enterprise in which her husband was a principal; that the venture was unsuccessful; and that plaintiff exerted "strong pressure and duress" upon her to make good his loss. Mrs. McCurdy avers that in compliance with plaintiff's demand she executed a promissory note in the sum of $10,000 payable to plaintiff, dated June 11, 1965, and forged the name of her mother, the defendant, as a comaker thereof and delivered it to plaintiff. Plaintiff denies knowing that defendant's name was forged. Mrs. McCurdy does not assert that he knew of it, but she claims that her mother, the defendant judgment debtor, did not know about the note and that the note does not represent any money loaned or advanced by plaintiff to her or to the defendant. Plaintiff does not deny these assertions.

It appears that in 1967 defendant's mind was deteriorating seriously and such deterioration continued progressively until her death. In 1969 she was having hallucinations and was senile and disoriented to such an extent that she needed institutional care 24 hours per day. In October of that year she was committed to E.J. Meyer Memorial Hospital for examination in the psychiatric clinic. The clinic reported that she should not be in a mental institution but in one for the aged and infirm; and in February, 1970 she was admitted to the Erie County Home for the Aged at Wende, New York, where she remained until the month of her death. The affidavits and supporting documents present a clear prima facie showing that defendant was incapable of protecting her interests, at least from February, 1970 onward.

Mrs. McCurdy avers that plaintiff frequently spoke to her about paying the note, and that shortly after defendant's

admittance to the Home for the Aged, she told plaintiff thereof and he replied, "My God, the county will take everything". Plaintiff denies making the latter statement, but does not deny that Mrs. McCurdy told him that her mother was in the County Home for the Aged.

Thereafter, on April 30, 1970, without notice to Mrs. McCurdy, plaintiff served a summons and complaint upon defendant in an action against her alone on said promissory note, and on June 11, 1970 he entered judgment against her upon her default in answering. Mrs. McCurdy states that she saw a notice in the newspaper of the entry of the judgment.

In opposition to the administrator's motion to vacate the judgment, plaintiff submitted his own affidavit and that of his attorney. He does not deny the circumstances giving rise to the note; but, in effect, he relies on alleged laches on the part of the defendant, since four or five years elapsed before effort was made to vacate the judgment. He urges that Mrs. McCurdy's statement that she forged the note is inadmissible, since her mother has died; and he also points to the facts that although it is contended that defendant's mind began to deteriorate in 1967 no committee was named for her and she was not committed to a mental institution, suggesting the inference that she was, therefore, not incompetent. Part of the attorney's affidavit is clearly based upon hearsay and to that extent lacks validity. It is interesting to note, however, that through his attorney the plaintiff claims that prior to April, 1970 he had conversations with Mrs. McCurdy in which *she* promised to pay the note. Nowhere does plaintiff allege that he ever contacted the defendant about making the note or paying it. In October, 1970, in August, 1972 and in September, 1973 plaintiff's attorney wrote to Mrs. McCurdy and her husband demanding payment of the note and threatening to sell the residence in which they lived, owned by decedent in her lifetime, unless the judgment was paid.

The record presented a strong prima facie showing not only that defendant was incapable of protecting her interests at the time when the action was begun and the default judgment was entered but that plaintiff knew or had reason to know thereof. The administrator made the motion herein promptly after his appointment. In these circumstances Special Term erred in denying the motion to vacate the judgment.

CPLR 1201 provides for the manner in which an incapable adult may appear in an action against him, to wit, "[a] person

shall appear by his guardian ad litem * * * if he is an adult incapable of adequately prosecuting or defending his rights". CPLR 1203 provides that, "[n]o default judgment may be entered against an adult incapable of adequately protecting his rights for whom a guardian ad litem has been appointed unless twenty days have expired since the appointment". The legal effect of the quoted provisions is that an action at law against a person incapable of protecting his interests or who apparently is so incapable and who has no committee or guardian, may not proceed without notice to the court of the circumstances and inquiry therein by the court.

"Incompetent persons become the wards of the court, upon which a duty devolves of protection both as to their persons and property. This duty is not limited to cases only in which a committee has been appointed, but it extends to all cases where the fact of incompetency exists" *(Wurster v Armfield,* 175 NY 256, 262; *Prude v County of Erie,* 47 AD2d 111, 113). "There is a duty on the courts to protect such litigants" *(Sengstack v Sengstack,* 4 NY2d 502, 509; and see *Matter of Lugo,* 8 AD2d 877, affd 7 NY2d 939; *Prude v County of Erie, supra).*

When a creditor becomes aware that his alleged debtor is or apparently is incapable of protecting his own legal interests it is incumbent upon him to advise the court thereof so that the court may make suitable inquiry and in its discretion appoint a person to receive service of a copy of the summons and complaint in behalf of the defendant *(Wurlitzer Co. v Williams,* 123 Misc 777; 1 Weinstein-Korn-Miller, NY Civ Prac, par 309.14; 21 Carmody-Wait 2d, New York Practice, § 124:10) and so the court may thereafter in its discretion appoint a guardian ad litem to protect the defendant's interests *(Oneida Nat. Bank & Trust Co. of Cent. N.Y. v Unczur,* 37 AD2d 480; *Matter of Bonesteel,* 16 AD2d 324; *Anonymous v Anonymous,* 3 AD2d 590, 594; *Roslyn Sav. Bank v Jones,* 69 Misc 2d 733, 744; 2 Weinstein-Korn-Miller, NY Civ Prac, pars 1201.05, 1201.08, 1203.01; 21 Carmody-Wait 2d, New York Practice, §§ 124:4, 124:18, 124:21, 124:25; and see *Seiden v Reimer,* 190 App Div 713, affd 232 NY 593).

At this point it is not necessary for the court to reach a determination of the precise capability of the defendant at the critical times nor as to the admissibility of Mrs. McCurdy's averment that the defendant did not sign or know of the note.

The merits of the action on the note are not reached on this motion or this appeal.

In compliance with the court's duty to protect a person who was apparently incapable of handling her affairs at the times of the service of the summons and complaint and entry of default judgment, the order should be reversed and the motion to vacate the judgment should be granted, without prejudice to plaintiff proceeding in a manner consistent with this opinion.

MOULE, J.P., CARDAMONE, SIMONS and DILLON, JJ., concur.

Order unanimously reversed, with costs and motion to vacate judgment granted.