OPINION OF THE COURT
Debra Silber, J.
In reading this decision, the court suggests the members of the Bar think of their grandparents, to better understand the court’s ire.
Landlord moves for an order “directing that the duplicate affidavit of service for the Notice of Petition and Petition be accepted and filed as the originals [sic]” and “directing that the warrant of eviction issue.” The motion was returnable before me on May 4, 2000 in Part Y. The tenant did not appear. Upon a cursory review of the file, the original affidavit of service was located therein and the court issued a short form order stating that the motion was denied as moot.
The court then, on its own initiative, reviewed the file. Motions to substitute duplicate or amended affidavits of service are innately suspicious. What the court found was so unsettling that the court decided it was necessary to call petitioner’s attorneys in for a conference, to amend the short form order previously issued, and to write a decision. The motion is not moot. A more accurate characterization is that the motion is misleading and evinces Rambo-like lawyering at its worst. In any event, it is denied and the case is dismissed.
Attorney Misconduct
The court wants to bring the actions of the law firm in question, Cohen, Hurkin, Ehrenfeld, Pomerantz & Tenenbaum, to light, for the Bench and Bar to be aware of. It is the court’s opinion that the firm committed four separate acts of misconduct, as will be explained below. The firm is advised that the *211 next instance of improper conduct will result in sanctions. In addition, the court has reported the process server in this matter to the New York City Department of Consumer Affairs, as is required.
This action was commenced by service of the petition and notice of petition on December 28, 1999, by substituted “nail and mail” service. Prior to that, a five-day rent demand was also served by substituted service, and the affidavit of service states that a copy was also mailed to “George Zarou,” at an address that the Brooklyn white pages indicate is the name and address of an attorney. The petition, however, was not mailed to said attorney, at least as stated on the affidavit of service. In January 2000, application was made for a default judgment and warrant to the Clerk, which was referred to the Judge sitting in Part Y. Said Judge issued a decision dated February 21, 2000, that states, in pertinent part, that the warrant was denied as “the affidavit of service reflects that both attempts at service were conducted within working hours before conspicuous posting and mail were utilized.” The Judge failed to add that the case was dismissed, but it is clear from the defective affidavit of service, combined with the written decision, that a new proceeding had to be commenced unless a motion could be validly made to correct the affidavit of service. Such a motion would of course require that there be allegations in an affidavit of the process server in support of such motion, stating, inter alia, that the process server made a mistake in completing the original affidavit of service that had been filed with the court. Because of the facts of this case, which will be explained below, such a motion (to correct an affidavit of service) is not applicable herein.
This motion is the first egregious act by the landlord’s attorneys. The proposed affidavit of service contained therein is not a duplicate, as stated by the attorney who prepared the affirmation in support, but is one that is not defective on its face. It sets forth different hours for the process server’s attempts at service. There is no affidavit from the process server, just one from said attorney, which states in part that the proposed warrant “was rejected by the clerk of the Court, however, with the notation that the affidavit of service * * * stated the incorrect time. Annexed hereto is a duplicate of the affidavit of service of said notice of petition and petition.” The attorney clearly knew that the affidavit he was trying to nunc pro tunc was not a duplicate, but was one which cured the defect noted by a Judge, not a clerk, and which he apparently hoped would result in a *212 warrant being issued. The court cannot accept an amended affidavit of service without an affidavit from the process server explaining the change and the reason for it. But this is a digression, as the instant motion does not seek to file an amended affidavit.
When the landlord knows the tenant is living in a nursing home, the tenant must be served with the petition and notice of petition at the nursing home in order for the court to have jurisdiction over the summary proceeding
The second egregious act is the application for a judgment and warrant on default, in light of the contents of the affidavit of investigation. The tenant is, according to the affidavit of investigation prepared by the landlord himself, and supplied to the court by landlord’s counsel, about 90 years of age, mentally incompetent, and resides in a nursing home. The landlord states in his affidavit that he spoke with a social worker at the nursing home to verify this, to make absolutely sure the tenant is not in the military. Satisfied that the tenant is not in the military, landlord’s counsel applied for a judgment and warrant upon the tenant’s default in responding to “nail and mail” service at the tenant’s apartment. No effort was made to serve the tenant at the nursing home, as required by RPAPL 735. “[I]t is held that the word ‘residence’ in RPAPL 735 means the particular locality where the tenant is actually living at the time the summary proceeding is commenced. If, because the tenant is actually living other than at the premises as to which possession is sought, landlord resorts to substituted service, process must be mailed to such other address if the landlord has written information thereof.. If the tenant is living there, that is the place where mail will be received and notice obtained of the litigation.” (417 E. Realty Assocs. v Ryan, 110 Misc 2d 607 [1981].) The mailing of additional copies of the papers to the respondent at the nursing home is mandated by RPAPL 735 (1) (a), which provides that there be additional mailings to the respondent at the tenant’s other residence where petitioner shall haye written information of the residence address. (See, 65 Cent. Park W. v Greenwald, 127 Misc 2d 547 [Civ Ct, NY County 1985].) .
The court holds herein that RPAPL 735 (1) (a) also by extension requires that a default may not be entered against a tenant when the tenant is not served at his or her other residence address even where the petitioner does not leárñ tif the other residence until the investigator discovers the tenant’s whereabouts in connection with preparing the affidavit of investiga *213 tion. In no other way can we avoid accidentally evicting people who are temporarily in a hospital, convalescent home or nursing home, or temporarily living with a relative or friend in order to recuperate from an illness.
For example, in F & P Mgt Co. v Bergere (222 NYS2d 962 [NY City Mun Ct 1961]), a longtime New York City-domiciled tenant went to Paris, France, became ill and did not mail the rent. The tenant claimed building employees had been informed of her visit in order to forward her mail to her, in care of the American Embassy in Paris. The American Consul subsequently wrote the landlord, advising that the rent would be delayed. Conspicuous service of process was made only in New York City, 11 days after the Consul wrote. The Municipal Court, proceeding under section 1421 of the Civil Practice Act (predecessor to RPAPL 735), determined that such service was invalid and restored the tenant to possession of the premises. Petitioner’s attorney has a duty to inform the court that the respondent may be incapable of defending the case due to mental incapacity
In addition to the requirement that the respondent be served at her known residence, the nursing home, the court further holds that as the landlord knew that the respondent is mentally incompetent, even service at the nursing home would not be sufficient to obtain a judgment and warrant on the respondent’s default. A default judgment entered against a party incapable of protecting her interests is invalid and unenforceable unless a guardian ad litem is appointed for such person. (Soybel v Gruber,[1] 132 Misc 2d 343, 347 [Civ Ct, NY County 1986], citing Barone v Cox, 51 AD2d 115 [4th Dept 1976].) It is the petitioner’s obligation to bring the respondent’s possible mental incompetency to the court’s attention, to permit the court to determine whether a guardian ad litem should be appointed to protect such respondent’s interests. Failure to do so will result in a default judgment that will be set aside, even after, for example, a foreclosure and subsequent sale to a third party. (Oneida Natl. Bank & Trust Co. v Unczur, 37 AD2d 480 [4th Dept 1971].) Thus, entering a judgment and executing a warrant, had one been issued, with knowledge that the tenant was mentally incapacitated and in a nursing home, would only *214 subject the landlord to potential claims for, inter alia, possession, wrongful eviction and property damage. In any event, any judgment entered would be vacated upon application if it is demonstrated that the respondent is an adult incapable of adequately protecting his or her rights, and had no guardian ad litem at the time of the default. (CPLR 1203.) Thus, the petitioner’s attorney not only has a moral obligation to inform the court, he has a legal obligation. In addition, proceeding in the face of potential claims against his client, the landlord, could subject the attorney to a suit by his client. Of course, once a guardian ad litem is appointed, a default judgment is valid if the requisite time subsequent to his or her appointment has run prior to the entry of the judgment.
As the Court aptly states in Barone v Cox (supra, at 117-118):
“CPLR 1201 provides for the manner in which an incapable adult may appear in an action against him, to wit, ‘[a] person shall appear by his guardian ad litem * * * if he is an adult incápable of adequately prosecuting or defending his rights’. CPLR 1203 provides that, ‘[no] default judgment may be entered against an adult incapable of adequately protecting his rights for whom a guardian ad litem has been appointed unless twenty days have expired since the appointment’. The legal effect of the quoted provisions is that an action at law against a person incapable of protecting his interests or who apparently is so incapable and who has no committee or guardian, may not proceed without notice to the court of the circumstances and inquiry therein by the court.
“ ‘Incompetent persons become the wards of the court, upon which a duty devolves of protection both as to their persons and property. This duty is not limited to cases only in which a committee has been appointed, but it extends to all cases where the fact of incompetency exists’ (Wurster v Armfield, 175 NY 256, 262; Prude v County of Erie, 47 AD2d 111, 113). ‘There is a duty on the courts to protect such litigants’ (Sengstack v Sengstack, 4 NY2d 502, 509; and see Matter of Lugo, 8 AD2d 877, affd 7 NY2d 939; Prude v County of Erie, supra).
“When a creditor becomes aware that his alleged debtor is or apparently is incapable of protecting his own legal interests it is incumbent upon him to advise the court thereof so that the court may make suitable inquiry and in its discretion appoint a person to receive service of a copy of the summons and complaint in behalf of the defendant * * * and so the court may thereafter in its discretion appoint a guardian ad litem to protect the defendant’s interests.”
*215 The courts have set aside foreclosures, divorces and money judgments, even after one year from the default has passed, where the judgment was found to be void due to the defendant’s mental incapacity. In the context of a summary proceeding in Housing Court, the appointment of a guardian ad litem is a routine occurrence. There is ample authority for such appointments in Housing Court. (Kings 28 Assocs. v Raff, 167 Misc 2d 351 [Civ Ct, Kings County 1995]; New York City Hous. Auth. v Hart, 147 Misc 2d 56 [Civ Ct, NY County].) It is also clear that a guardian ad litem may be appointed even though there has not been a judicial adjudication of incompetency. (Matter of Stane v Dery, 86 Misc 2d 416; Matter of Lugo, 8 AD2d 877 [1959], supra!)
Thus, what appears to be a somewhat novel issue is the duty of the petitioner’s attorney in a summary proceeding to bring to the court’s attention the tenant’s possible inability to defend the case. But it is not so novel that the landlord’s attorneys can claim they were unaware of their duty. Landlord’s attorneys are in Housing Court every day of the year. They should know all the applicable laws, rules and regulations. Nonetheless, as stated previously, the court is not imposing any sanctions at this time.
The public policy of this State, and of the courts, is one of rigorous protection of the rights of the mentally infirm. (See, e.g., Vinokur v Balzaretti, 62 AD2d 990 [2d Dept 1978].) It is well settled that the landlord,[2] the Commissioner of Social Services (Protective Services for Adults),[3] attorneys, including legal services attorneys,[4] relatives of the tenant, and other persons interested in the tenant’s welfare have standing to make a motion for the appointment of a guardian ad litem in Housing Court. In addition, the Judge has the authority to appoint a guardian ad litem sua sponte. (Soybel v Gruber, supra.) CPLR 1201 and 1203 “ ‘are to be read together and interpreted as requiring the appointment of a guardian ad litem in every case where the defendant is an adult incapable of adequately protecting his rights, before a default judgment may be entered against him.’ ” (Sarfaty v Sarfaty, 83 AD2d 748, 749 [4th Dept 1981].) The Court goes on to say (at 749) that “[t]his places the burden upon a plaintiff who has notice that a defendant in his *216 action is under mental disability, to bring that fact to the court’s attention and permit the court to determine whether a guardian ad litem should be appointed to protect such defendant’s interests.”
In State of New York v Getelman (NYLJ, Sept. 7, 1993, at 25, col 6, at 26, col 1 [Sup Ct, Albany County], supra), the court states: “[P]laintiff had notice that defendant was under a mental disability; and even though plaintiff determined it lacked sufficient proof upon which to make a motion for appointment of a guardian ad litem, plaintiff was, nevertheless, obligated to bring this fact to the court’s attention so that it could make a suitable inquiry * * * as to whether a guardian ad litem was necessary to protect defendant’s rights.”
It is unequivocal that this duty on the plaintiff’s part applies in the Second Department. In State of New York v Kama (267 AD2d 225, 226 [2d Dept 1999]), the Court states: “The record reveals that the plaintiff was on notice that the defendant suffered from a mental disability. Accordingly, the burden was on the State [the plaintiff] to bring that fact to the attention of the court to make a suitable inquiry into whether a guardian ad litem was needed before judgment could be entered. As the State [plaintiff! failed to do so, the judgment must be vacated.”
In the Housing Court context, the rule is no different. In Scherer, Residential Landlord-Tenant Law in New York § 7:116 the authors make it crystal clear that “[i]f an attorney representing a landlord has reason to believe that the respondent is in need of a guardian ad litem, the attorney has an obligation to bring that fact to the court’s attention, so that the court can make a suitable inquiry into whether appointment of a guardian is necessary. [Citations omitted.] This is especially important in cases in which the tenant defaults.” (Emphasis added.)
Thwarted in their efforts to reclaim this apartment, landlord’s attorneys made the instant motion without any affidavit from the process server as to why a different affidavit of service of the papers commencing the proceeding should be accepted by the court when the first one was insufficient. When the instant motion was denied on May 4, 2000, petitioner commenced a second proceeding,[5] again without service on the respondent at the nursing home. It is hard to believe this was due to carelessness and was not intentional, as landlord’s attorneys claim, but the court has given them the benefit of the. *217 doubt as they have agreed to discontinue the second proceeding. The landlord’s attorneys could have contacted the tenant’s attorney, whose name they had notice of, or contacted the nursing home to see if they would bring a guardianship proceeding under article 81 of the Mental Hygiene Law (a common practice), or whether the tenant has assets that could pay the rent arrears, if someone has power of attorney for the tenant and could pay her rent, whether she has a chance of returning home or is too ill, and whether she has any known relatives who could move her possessions if she does not intend to return to the apartment. But, the reality is that the landlord’s attorneys were not obligated to do any of these things. They were obligated, however, to serve the tenant at the nursing home.
If the nursing home, after being notified, does not assist the tenant in responding to the proceeding, the attorneys for the landlord are then required to inform the court that it might be necessary to appoint a guardian ad litem for the tenant. The court could then make proper inquiry, and if warranted, appoint a guardian ad litem. The order could, for example, allow the guardian ad litem to enter the apartment to look for information about the tenant’s relatives, a will, assets, etc. Possibly the proceeding could then be settled. Even if a settlement could not be reached, a judgment obtained by the landlord after the guardian was appointed would be a valid judgment under CPLR 1203. But it is quite clear that applying for a default judgment on these facts is improper. An attorney must zealously represent his client, but in doing so must not run roughshod over other people’s rights.
At the conference in chambers on June 5, 2000, two attorneys appeared from the firm representing petitioner, the one who argued the motion and the one who prepared the affidavit in support. Both assured the court that the motion papers were nothing more than a typographical error, apologized, and claimed that no attorney in the firm had read the affidavit of investigation. They claimed they did not know that the tenant is in a nursing home. The court advised that closer supervision of the firm’s staff is necessary. The attorneys stated that the second action brought would be discontinued and a third action commenced which will be served on the respondent at the nursing home. Counsel also assured the court that if respondent does not answer, they will not take a default judgment without making a motion for the court’s consideration of the need for a guardian ad litem. The court will monitor the file to see that this is in fact what transpires.
*218 While tenant’s possessions may end up in a storage warehouse one day, her valuables perhaps “lost” en route thereto, instead of distributed as she intended in her will, all records of her assets and possibly her original will lost, any bank accounts and safe-deposit box contents transferred to New York State as abandoned, such a result will not be on the court’s conscience.
This proceeding is dismissed.

. A housing case, which dealt with a motion for the appointment of a guardian ad litem. Subsequently, the court found that an elderly tenant temporarily in a nursing home cannot be evicted for giving up her primary residence without evidence that she intended to relinquish her apartment. (Soybel v Gruber, 136 Misc 2d 430 [Civ Ct, NY County 1987].)

. 466 Assocs. v Murray, NYLJ, June 19, 1991, at 24, col 1 (Civ Ct, NY County).

. Pursuant to Social Services Law § 473.

. State of New York v Getelman, NYLJ, Sept. 7, 1993, at 25, col 6 (Sup Ct, Albany County).

. Index No. 74197/00.