OPINION OF THE COURT
Richard W. Wallach, J.
Section 18 of the Rent, Eviction and Rehabilitation Regulations of the City of New York provides that upon application of the landlord “the Administrator shall * * * order decontrol [of] a housing accommodation where he finds that the tenant in possession maintains his primary residence at some place other than at such housing accommodation.” This CPLR article 78 proceeding challenges as arbitrary and capricious the denial by the respondent commissioner of petitioner L. J. M. Venture’s (L.J.M.) application for decontrol of apartment 7A at 301 West 106th Street.
*292 FACTS
L.J.M.’s application for section 18 decontrol was filed with the district rent director on June 1, 1979. L.J.M. alleged that Mrs. Erma Haas, tenant of apartment 7A vacated apartment 7A on or about March 1, 1979 removing all furniture and furnishings. L.J.M. further alleged that conversations with Mrs. Haas’ son Frank, revealed that his 81-year-old mother had been admitted to a nursing home. The dual factors of removal of furniture and admission to the nursing home formed the predicate for landlord L.J.M.’s application for “primary residence” decontrol.
Mrs. Haas’ son Frank responded in opposition to L.J.M. He denied that the apartment was vacant and, while conceding that “my mother is presently a patient in a nursing home,” insisted nonetheless that, “she has made a rapid recovery from illness, is enjoying excellent health and there is no reason to believe she will not be able to return to her apartment.” When the district director demanded of Frank Haas that he provide documentary evidence concerning the nature of his mother’s illness and the date of her approximate return to 7A, Haas responded with a note from a Dr. Steinhardt. The note, dated August 27, 1979 stated in its entirety: “Erma Haas who is my patient is in a nursing home, is making steady improvement and could possibly return in 8-10 weeks.”
In reply, L.J.M. insisted that the crucial factor in the case was the fact the apartment was completely vacant. Pursuant to L.J.M.’s request, an inspection of 7A was carried out on September 18, 1979 by one of respondent’s employees, Inspector Shapiro. Shapiro gained access to the apartment through the building superintendent. He reported that 7A was totally vacant; all furniture had been removed and no phones were on the wall.
On the basis of Shapiro’s inspection report, the district office’s hearing examiner recommended decontrol and an order to that effect was granted on October 1. Frank Haas protested the decontrol order as being “contrary to the medical evidence that tenant has good prospects of returning to her apartment.” On March 24,1980 the respondent’s *293 protest decision denying decontrol was issued. After reviewing all the evidence and considering the matter de nova, the commissioner ruled against L.J.M. for two reasons. First, “the fact that tenant might or might not return renders the application tenuous.” Second, “it is doubtful whether the occupancy of a place in a nursing home is the equivalent of a change in primary residence.” This article 78 followed.
DISCUSSION
The commissioner’s ruling denying decontrol was arbitrary and capricious and must be anulled. Viewed dispassionately, the record produced at the administrative proceedings below precludes any conclusion but one — that Mrs. Haas has abandoned apartment 7A to take up a new residence in a nursing home.
There is no dispute that for a period of approximately 15 months (March, 1979-June, 1980), the 81-year-old tenant has been absent from 7A and has spent that time in a nursing home. In addition, the commissioner’s own inspection report established that the apartment at issue is vacant, bare of any indicia of present or prospective habitation.
This imposing phalanx of proof is not seriously undermined by Dr. Steinhardt’s note of August 27, that Mrs. Haas “could possibly” return from the nursing home in 8 to 10 weeks. Conspicuously absent from the doctor’s note is any mention of the nature of Mrs. Haas’ illness, the reason for her admission to the nursing home and the basis upon which the doctor reached his hesitant forecast that Haas “could possibly” depart from the home in the near future, a prediction that has in fact proved wrong.
This court has no difficulty in ruling that against this evidentiary backdrop there was no foundation for the commissioner’s order denying decontrol. (See Matter of S & L Mgt. Co. [Yoswein], NYLJ, Feb. 3, 1975, p 2, col 4; Matter of Veltri [Joy], NYLJ, Jan. 26, 1976, p 6, col 2.)
Respondent counters, however, and offers two grounds in support of his determination against decontrol. First, the assertion is made that in granting the tenant’s protest, *294 the commissioner never considered the inspection report which revealed that apartment 7A was vacant. That report, according to respondent, was the product of an illegal search of the apartment conducted without tenant’s permission. As such it is inadmissible evidence in an administrative proceeding and in addition should not be considered by this court. Reliance is placed on Matter of Rasky (Joy) (NYLJ, Aug. 2, 1977, p 5, col 2) where a decontrol decision influenced by the results of an unauthorized inspection was annulled and remanded.
Secondly, the commissioner is of the view, that as a matter of law, a stay in a nursing home does not constitute a change of primary residence under section 18 of the Rent, Eviction and Rehabilitation Regulations of the City of New York. As the commissioner puts it: “The Rent Commissioner cannot allow himself to become the person who will decide whether a patient in a nursing home will or will not live, and for how long and to determine now, if a tenant’s future health will allow her to return home * * * The Commissioner should not be mandated as the one who will decide whether * * * an individual’s residence in a nursing home is permanent. To do so would be to take on a power impossible to delegate by the laws of man.” [Sic.]
I find respondent’s contentions without merit.
THE INSPECTION REPORT
There is no support in the record for the commissioner’s claim that he excluded the inspection report in arriving at his protest decision. The protest opinion states that the commissioner was reviewing “all” of the evidence then in the record and was considering the entire case “de nova”. The inspection report was the crucial bit of evidence relied upon by the hearing examiner in recommending decontrol. Had the commissioner excluded the report as an influence on his protest determination, it seems self-evident that he would have manifested this on the record. It thus becomes readily apparent that the purported disregard of the inspection report is an issue raised for the first time on this article 78 proceeding. It therefore cannot serve as a ground for preserving the decision reached below. (See Matter of 104-l4 *295 Tapscott St. Realty Corp. v Berman, 56 Misc 2d 869, 871; Matter of Carrazza Buick [C. Richard Ferris, Inc.—Catherwood], 20 AD2d 613.)
Moreover, the record is entirely silent on whether the inspection was in fact unauthorized. Inspector Shapiro’s remarks indicate nothing more than that access to the apartment was granted by the superintendent. No inference can be drawn from this scant bit of evidence whether or not entry was effected without tenant’s consent or indeed whether the lease permitted the superintendent to grant access to 7A to city inspectors. Thus, even if the commissioner did disregard the inspection report, there was no basis for doing so in the abence of a more convincing showing that the search was unauthorized.
Finally and more fundamentally the commissioner may not come before this court seeking to vindicate the rights of tenant Mrs. Haas against an unauthorized search carried out by his own agents. It is a cardinal principle of Fourth Amendment law that the right to demand exclusion of illegally obtained evidence is a personal one, accruing exclusively in favor of the victim of the search. (See, e.g., Wong Sun v United States, 371 US 471; People v Estrada, 23 NY2d 719, cert den 394 US 953.) In the instant case, neither tenant Haas nor those representing her interests have ever claimed any illegality in connection with the search. For this reason Matter of Rasky (Joy) (NYLJ, Aug. 2, 1977, p 5, col 2, supra), where the tenant moved successfully to suppress the illegally produced inspection report, is easily distinguishable. Simply put, on this record the commissioner lacks standing to challenge the propriety of the search or to ignore the evidentiary fruit of that search.
NURSING HOME AS NEW PRIMARY RESIDENCE
Equally specious is the respondent commissioner’s position in denying L.J.M.’s decontrol bid that “a move to a nursing home is not a surrender of a primary residence” under section 18. Not only is such an absolutist view logically untenable but it flouts the legislative purpose underlying section 18’s enactment.
*296 The relevant legislative documents indicate that section 18 was designed to alleviate the critical shortage of apartment housing existing in the City of New York. (See NY Legis Ann, 1971, p 313.) That shortage, the Legislature believed, was caused in part by the withholding of rent-controlled apartments from the housing market by those who used the apartments infrequently. (See NY Legis Ann, 1971, p 313.) It was hoped that, section 18’s provision for decontrol which removed the low rent advantages for underutilized apartments, would free a number of desperately needed housing units for rental by those who intended to use the apartments as primary residences. Plainly, then, an overriding purpose of section 18 was to insure that only those New Yorkers using their apartments as primary residences were to reap the rent benefits provided by rent-control status. To carve out against this legislative background an inflexible rule exempting nursing home occupants from the reach of section 18 would be to engraft upon the law an exclusion neither contemplated by the Legislature nor consonant with the policies impelling section 18’s enactment.
Moreover, determining when a move to a nursing home constitutes a change in primary residence is not the intractable problem the commissioner makes it out to be. A careful examination of the facts and circumstances causing the nursing home move will, of course, be necessary. A move to a nursing home may, in a given instance, betoken a short convalescence from an illness, or it may signal in the case of an elderly and infirm patient a permanent relocation and an end to a self-supporting life-style. Situations lying on the midpoint of the spectrum will undoubtedly also arise. In resolving whether an abandonment of a primary residence has occurred, expert medical testimony bearing on the patient’s ability to leave the nursing home may have to be evaluated by the commissioner. The patient’s ultimate intent to return to her apartment will also be relevant. (Cf. Matter of Magpat Realty [Joy], NYLJ, June 13, 1975, p 15, col 1.) The commissioner in short, must, on the basis of the facts presented, fulfill the statutory obligation imposed on him by section 18 and decide when the tenant has surrendered a primary residence. He may not, as was done here, *297 shirk his administrative fact-finding duties by taking sanctuary in the baseless supposition that to “decide [when] an individual’s residence in a nursing home is permanent * * * [is] to take on a power impossible to delegate by the laws of man [sic].”
Indeed in a case nearly identical to this one, the commissioner has ruled that a long-term convalescence at a place other than the tenant’s apartment was a change in primary residence. (See Matter of Feilchonfeld, Protest Docket No. CPTA 17, 605, Aug. 10, 1978 [where elderly woman convalesced from eye surgery for nearly two years at daughter’s apartment, held: new primary residence established despite protestations that eventual return to apartment was planned].)
In the instant case, the vacant apartment, the advanced age of the tenant and the extended stay in the nursing home combine conclusively to establish that a change in primary residence has taken place. The respondent’s denial of decontrol is, therefore, annulled.