OPINION OF THE COURT
Peter Tom, J.
The troubling issue in this case is whether a landlord can *431 recover possession of a rent-controlled apartment from a tenant presently a resident of a geriatric center, based on the ground that she can no longer maintain the apartment as her primary residence.
Respondent Gruber is an 84-year-old rent-controlled tenant of the subject premises since the 1940’s. She was diagnosed to be suffering from Alzheimer’s disease and has been an inpatient of Isabella Geriatric Center in New York City since August 1984.
Petitioner commenced this holdover summary proceeding against respondents in or about April 1985 contending thát due to respondent Gruber’s advanced age, and deteriorating mental and physical condition, she will no longer be able to return to her apartment and maintain it as her primary residence.
Respondent Obermeyer is the granddaughter of respondent Gruber and presently the occupant of the premises. She claims legal rights to this apartment based on the allegation that she resided with her grandmother for an extensive period of time before she was admitted to the center.
Prior to the trial of the proceeding a guardian ad litem was appointed on behalf of respondent Gruber. The guardian, Eva Obermeyer, is the daughter of respondent Gruber and mother of respondent Vickie Obermeyer. Respondent Gruber did not appear in court.
The issue as to whether the primary residence law applies to a tenant confined in a nursing home facility has been addressed by two Supreme Court cases. This issue has never reached the appellate courts.
In Matter of L.J.M. Venture No. 1 v Joy (105 Misc 2d 291 [Sup Ct, NY County 1980]), which was cited by petitioner in support of his contention, the court determined that an 81-year-old rent-controlled tenant residing in a nursing home had changed her primary residence. The court’s determination was based on the finding that the tenant had removed all her belongings and furnishings from her apartment, her advanced age and extended stay in the nursing home.
In Heller v Joy (NYLJ, Feb. 22, 1984, at 6, col 1 [Sup Ct, NY County]) the court found that an 82-year-old rent-controlled tenant who was confined in a nursing home in Florida recuperating from brain surgery, a stroke and a broken hip did not abandon her primary residence in New York.
The court in the Heller case (supra) based its determination *432 on the intention of the tenant as to whether she abandoned her New York residence and established new primary residence in Florida. The court stated (supra, at 6, col 2), "[p]rimary residence is basically a determination of the intention of the tenant and that intention can only be determined by examination of the act of the tenant giving clue to his true subjective purpose.” The court then found that the tenant did not abandon or change her primary residence.
The court agrees with the reasoning and finding in the Heller case (supra).
The facts in the L.J.M. Venture case (supra) are distinguishable from the facts in the Heller case (supra) and in this case. The tenant in the L.J.M. Venture case clearly abandoned her rent-controlled residence. The court in the Heller case commented that given the facts in the L.J.M. Venture case the conclusion is inescapable that the tenant changed her primary residence.
The evidence in this case does not show that respondent Gruber had any intention of relinquishing her rights to the rent-controlled apartment.
She was admitted to Mount Sinai Hospital in or about July 1984 by her daughter because she was confused and disoriented. She was transferred to Isabella Geriatric Center on August 30, 1984.
Respondent Gruber’s personal physician, Dr. Gerard M. Lehrer, who admitted her into the hospital in 1984, testified that her subsequent transfer to the geriatric center was purely a financial and not a medical decision. He testified that respondent Gruber needed full-time home care. Since the family could not arrange payment by Medicare for a full-time home attendant, temporary arrangements were made to have her admitted to a geriatric center.
All of respondent Gruber’s belongings and furnishings remain in the apartment.
The family and Dr. Lehrer have recently ascertained that Medicaid will pay for a full-time home attendant to care for her.
Petitioner’s contention that he is entitled to recover possession of the premises based on the fact that respondent Gruber will not be able to return to her apartment due to her deteriorating mental and physical condition is not supported by the evidence or the law.
The landlord’s expert witness, Dr. Leon Lefer, testified that *433 respondent Gruber has a progressive form of Alzheimer’s disease requiring medication and the continuous care of a qualified physician. His evaluation is based solely on his review of respondent Gruber’s medical record. He has never examined respondent Gruber even though respondent Gruber, through her guardian, consented to a physical examination. Dr. Defer testified that the medical report of Dr. C. Blair, chairman of the utilization unit of Isabella, certifying that respondent Gruber cannot be released from the center supports his conclusion.
A review of the medical records show that respondent Gruber was diagnosed as being confused and disoriented. She is ambulatory, and with permission has left the center on a pass with her daughter and granddaughter. The geriatric center is mainly providing her with skilled nursing care.
Dr. Blair’s certification provides that respondent Gruber has to stay in the geriatric center for the following reason: "Confusion — needs added structure of S.N.F.”
S.N.F. stands for skilled nursing facility.
The certification shows that respondent Gruber’s stay in the geriatric center is based on her need for skilled nursing care and not for any medical reasons.
Dr. Lehrer who examined respondent Gruber in 1984 and again on January 2, 1987 testified that her neurological state did not change in approximately 2 Vi years but she remains poorly disoriented. Her physical health is in good condition. She has a colostomy since 1974 which the doctor states can be properly monitored by a trained attendant. Dr. Lehrer concludes that respondent Gruber can function normally at home with a full-time home attendant.
The court finds Dr. Lehrer’s evaluation to be more accurate and that petitioner has failed in his burden to prove that respondent Gruber can no longer return to her apartment based on her mental and physical condition. However, the court is not making a finding that it would be in the best interest of respondent Gruber to leave the geriatric center. That is strictly a medical decision for her attending physician to make.
The court further finds that the primary residence law was not intended and should not apply to a senior citizen who is confined in a geriatric facility or nursing home and has no intention of abandoning her rent-regulated apartment.
The primary residence law was enacted in 1971. New York *434 City Rent and Eviction Regulations § 18 provided for the decontrol of any housing accommodation which was found by the Rent Administrator not occupied by the tenant as his or her primary residence. (L 1971, ch 373, § 1.) Jurisdiction to hear primary residence cases was later transferred from the Rent Administrator to the courts under section 42 of the Omnibus Housing Act of 1983. (L 1983, ch 403, § 42.)
Section 18 was designed to alleviate the critical shortage of housing in the City of New York by releasing those rent-controlled apartments, not occupied as primary residence, to residents who are in need of them. This section was directed against those tenants who have established primary residence elsewhere and continued to retain their rent-controlled apartments for reasons of convenience and monetary benefits. (1971 McKinney’s Session Laws of NY, at 2402.)
The legislative memorandum provides for the need of section 18 in part: "There are instances, for example, of persons who, rather than paying for hotel facilities when their presence is required in a community, find it less expensive to retain year-round possession of a rent controlled housing accommodation which they rarely occupy.” (1971 McKinney’s Session Laws of NY, at 2402.)
We do not have such a situation in this case. The tenant did not voluntarily relinquish her rights to the rent-controlled apartment nor did she abuse the rent control law.
It would be inhumane and would not serve the purpose of the primary residence law to forcibly take away from the senior citizen her rent-controlled apartment and discard all her property and belongings from the premises as if she had already died.
With today’s advanced medical technology and research, we cannot discount the possibility that a cure may be found for Alzheimer’s disease.
To take away a senior citizen’s home while confined in a geriatric facility or nursing home would end all hope of the tenant of ever returning to her apartment. It is often the belief and desire of the senior citizen that she may one day be able to return to her apartment and live independently which can effect her mental and physical well-being.
A rent-controlled apartment can represent dignity and pride to the senior citizen and be a way of showing that she can still be independent and self-sufficient.
It would not be justice to strip a senior citizen of her last *435 vestige of dignity and pride against her will for the sake of making a monetary profit.
In this case the building in issue is in the process of being converted to a cooperative. The red herring plan was sent to the tenants in December 1984. Respondent Gruber’s apartment is listed as vacant in the plan. This building contains 62 units and 16 floors. Petitioner stands to make a huge profit in the conversion. The recovery of respondent Gruber’s apartment would only mean a higher profit for the landlord.
The application of section 18 by the petitioner in this proceeding does not serve the purpose of the primary residence law. The law was enacted to open up more affordable housing to the residents of the City of New York. The conversion of this rent-controlled apartment into a cooperative unit would turn this apartment into a luxury rental which will not be affordable by many city dwellers who are in need of housing.
We should not be so callous and insensitive to the needs of our senior citizens. Our society has the obligation to care for and protect our citizens in their golden years. They have toiled through life and have made their contributions to society. Often they are alone and no longer needed. Their problems associated with advanced age, including social, economic and housing problems are at times not properly attended to by society. Many of our senior citizens live at the brink of subsistence with little or no subsidy or benefits to support them. They often face these problems with no solution other than hope, suffering and despair.
We should be providing more affordable and decent housing for them to live out their remaining years instead of seeking to take their homes away from them.
If a senior citizen chooses to retain her rent-controlled apartment as her primary residence and pays her rent monthly while confined in a geriatric facility or a nursing home, it should be within her rights to do so. This right should be recognized and respected by our society.
Respondent Obermeyer testified that she has been living continuously in the subject apartment since 1982.
New York City Rent and Eviction Regulations § 56 (9 NYCRR 2204.6) provides that the landlord may recover possession of a housing accommodation where a subtenant occupies the premises without the permission of landlord and the tenant of record no longer occupies the premises.
*436 Section 56 (d) (9 NYCRR 2204.6 [d]) provides that no occupant shall be evicted who is either the surviving spouse of the tenant or other member of the deceased tenant’s family who has been living with the tenant.
The Court of Appeals in 829 Seventh Ave. Co. v Reider (67 NY2d 930) ruled that for a family member to receive legal rights to a rent-controlled apartment pursuant to section 56 (d) there must be some indicia of permanence and continuity while living with the tenant before his or her death.
The provision of section 56 (d) extending rent-control protection to a spouse and family member also applies to situations where the tenant-of-record has vacated the premises. (Matter of Herzog v Joy, 74 AD2d 372; Cogan v State of New York, NYLJ, Jan. 29, 1986, at 12, col 4.)
The evidence in this case does not support respondent Obermeyer’s testimony but shows that she moved into the apartment after her grandmother was admitted to the geriatric center.
The evidence established that respondent Obermeyer had her own residence in Brooklyn from February 1982 to February 1986. The lease .to the premises is a residential lease. Respondent Obermeyer’s income tax returns for the years 1981 to 1984, inclusively, had this address as her residence. She receives her mail at this address. Her driver’s license and voter registration in 1984 list this address as her residence.
Respondent Obermeyer was evicted from her Brooklyn apartment in February 1986 by the landlord for her failure to live at the premises. If respondent Obermeyer’s testimony was true that she lived with her grandmother since 1982 and not at the Brooklyn apartment her landlord would have commenced eviction proceeding against her much earlier than 1985.
Respondent Obermeyer is listed in the medical record of respondent Gruber as the person to contact in case of an emergency. Her Brooklyn address and telephone number are listed in the record.
Respondent Gruber’s neighbor, Carlos Navedo, testified that he did not see respondent Obermeyer in the premises in issue until approximately a few months after her grandmother was admitted to the geriatric center. This fact was substantiated by the testimony of the superintendent, Manuel Rey. He testified that from 1982 to 1984 he went into respondent Gruber’s apartment almost on a monthly basis to make re *437 pairs and found respondent Gruber to be the only occupant of the premises.
Respondent Obermeyer learned of the cooperative plan for her grandmother’s building in the summer of 1984. She called petitioner in or about September 1984 informing him that she wished to move into the apartment. Petitioner asked that she send an application which she never did.
The court finds respondent Obermeyer’s testimony not credible and that she moved into her grandmother’s apartment after the grandmother was admitted to the geriatric center.
It is disturbing to the court to see that the concern of the parties in this case is the monetary gain which can be derived from this apartment rather than the welfare of this aging tenant.
Based on the foregoing, the petition is dismissed.