In the Matter of the Estate of EMMA PARKER RILEY, Deceased.

Surrogate's Court, Niagara County, July 27, 1933.

*Augustus Morris* [*J. Wesley Andrews* of counsel], for the proponent.

*Burt A. Duquette,* for the contestant.

GOLD, S. On the 11th day of June, 1932, a last will and testament of decedent was offered for probate in this court. Said will was executed on the 3d day of November, 1923, and in it decedent stated that she was " of the City of Lockport," Niagara county.

In said will she bequeathed to a niece, Hattie Schornstine, of Wyoming county in this State, $1,000; to a nephew, Edward Weaver, $500; to a niece, Nellie Wemple, $500; and the remainder in six equal parts to other relatives. She directed that her remains be buried in Glenwood Cemetery within the city of Lockport.

Upon the return day of the citation, Harriet A. Schornstein, who is the Hattie Schornstine named in the will, filed objections to the probate of the same. In said objections the contestant claimed that said decedent made a last will and testament, bearing date June 2, 1932, in which she was named as executrix, and which revoked all former wills made by decedent. She further stated that said later will had been offered for probate in the Surrogate's Court of the county of Wyoming in this State.

Subsequently, further objections were filed by said Harriet A. Schornstein, setting up the fact that said decedent was at the time of her death a resident of the said village of Castile and that this court was without jurisdiction to proceed in the matter of the probate of the former will.

The proceeding in this county was adjourned until after the return of the citation issued in Wyoming county upon the second will. Upon the return of said citation, the surrogate of Wyoming county held that the question of jurisdiction would have to be determined in this county, inasmuch as a proceeding was pending here and the question of jurisdiction was raised therein. The attorneys for the parties acquiesced in the ruling of the surrogate of Wyoming county and submitted the matter to this court.

Decedent died in the village of Castile on the 6th day of June, 1932, four days after the execution of the second will, and at the time of her death was at the home of said Harriet A. Schornstein.

According to the testimony offered, decedent, at the time of her death, was upwards of the age of eighty-seven years, and had lived in the county of Niagara all of her lifetime, except for a short time when she resided in the State of Kansas, but returned to the city of Lockport about the year 1893. She lived continuously thereafter at 51 Akron street, Lockport, until such time as she went to the home of Mrs. Schornstein.

During the month of January, 1930, decedent received an injury to her hip; she was taken to the Lockport City Hospital, where she remained a patient until about the 22d day of June, 1930, when she again returned to her home in Akron street. She was cared for until the middle of October, 1930, by her stepdaughter, who was replaced by Mrs. Schornstein, who came to the city of Lockport and lived with and cared for decedent in her home until the early part of the year 1931. About the month of January,

1931, Mrs. Schornstein took decedent to her home in Castile to care for and nurse her in her home, where she remained until the latter part of June, 1931, when Mrs. Schornstein brought the decedent back to her home in the city of Lockport. Decedent remained there, still being cared for by Mrs. Schornstein, until about Thanksgiving time of that year. Mrs. Schornstein again took decedent over to her home in Castile, where she remained until her death.

During all the time decedent was at Mrs. Schornstein's home, decedent's house in Lockport remained furnished; the electric lights, water and telephone remained connected until after her death. Nothing was taken from her home to Castile except a small quantity of her personal clothing. At her death, decedent's remains were brought to Lockport, the funeral was held at Lockport, and she was buried in her lot in Glenwood Cemetery. During all the time from 1893 to the time of her death, decedent's business was done at Lockport; her bank account was in the Farmers and Mechanics Savings Bank in said city and her pension check was also sent to Lockport and delivered to her niece, Mrs. Wemple.

The contestant claims that, notwithstanding these facts, the decedent had actually intended and did create a change of domicile from the county of Niagara to the county of Wyoming; that Mrs. Schornstein had made certain improvements in her home at Castile prior to November, 1931, so that decedent would have a downstairs lavatory and toilet conveniences adjacent to her room.

Contestant also relies upon the fact that about three weeks before her death, decedent executed a power of attorney to Mrs. Schornstein, in which were the words, " Emma Parker Riley, of the Village of Castile." She also relies upon the fact that in the second will, which has been offered for probate in the county of Wyoming, a similar statement is made. The proponent of the will in Niagara county claims that both the power of attorney and later will were the creations of Mrs. Schornstein and prepared by an attorney of Mrs. Schornstein's choosing, and further that decedent had been suffering for some time with senile dementia and was, therefore, incapable mentally of making a change of domicile. Proponent produced two doctors who testified that, in their opinion, decedent was suffering from such disease. No medical testimony was offered to refute the same.

The proponent also claims that Mrs. Schornstein took decedent to her residence as a matter of convenience for herself and also claims that the decedent would have returned to her own home in Lockport at any time her physical and mental condition would have warranted it.

In the later will all of the property of decedent was left to Mrs. Schornstein and nothing left to the others mentioned in the first will.

The statements in the power of attorney and the later will which state that decedent was " of the Village of Castile," are not conclusive in fixing decedent's last domicile. This was held in *Matter of Riley* (86 Misc. 628). In referring to a will the court said: " It is to be gathered from these statements that it was decedent's intention to be considered a resident of Mexico, and that the recital in his will, ' now of the city of New York,' and in the codicil, ' of New York' are mere descriptive recitals and should not be regarded as conclusive in fixing decedent's last domicile." Notwithstanding these words in the recitals, the court held that the decedent was a resident of Mexico and not a resident of the city of New York.

This decision is also supported by the same surrogate in *Matter of Grant* (83 Misc. 257).

We must, therefore, go beyond the mere descriptive recitals in order to determine the domicile of the decedent in this case. The burden of proof is upon the contestant to establish affirmatively the fact of such intention to make such change.

"As domicile and residence are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile.

" The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change. * * * There must be a present, definite and honest purpose to give up the old and take up the new place as the domicile of the person whose status is under consideration." (*Matter of Newcomb*, 192 N. Y. 238; *vide* 250, 251.)

" He must not only have changed his physical presence from one State to the other, but he must have done so with the intent of thereby abandoning his former domicile in this State and acquiring one in Ohio as his sole domicile. As the domicile of origin is presumed to continue, the burden of proof rests here upon the contestant to establish affirmatively the fact of such intention." (*Matter of Horton*, 175 App. Div. 447; *vide* 452.)

"To effect a change of domicil for the purpose of succession there must be not only a change of residence, but an intention to abandon the former domicil, and acquire another as the sole domicil. There must be both residence in the alleged adopted domicil and intention to adopt such place of residence as the sole domicil. Residence alone has no effect *per se*, though it may be most important, as a ground from which to infer intention. Length of residence will not alone effect the change. Intention alone will not do it, but the two taken together do constitute a change of domicil." (*Dupuy* v. *Wurtz*, 53 N. Y. 556; *vide* 561.) (See, also, *Matter of Harkness*, 183 App. Div. 396.)

Having in mind that the burden of proof is upon the contestant of establishing the change of domicile of decedent, I do not believe she has met this burden imposed upon her. Decedent resided in the city of Lockport a long number of years and there is no question that she would have continued to live in her home in Akron street had not the misfortune of illness come upon her. During that illness, she, of necessity, had to be cared for by others. Mrs. Schornstein spent some months at the home of decedent and I can easily see that it was more convenient to take decedent to her home in Castile. I am also convinced that if the health of decedent had improved, she would have returned to her home in Akron street, Lockport, which remained furnished during her absence. While the fact that she desired to be buried in the cemetery at Lockport after her death is not controlling, it bears considerably upon the mental attitude of decedent with reference to her domicile. In my opinion she was forced to go to Castile because of her infirmities and not with any intention on her part to establish a new domicile.

Let a decree be entered accordingly.