Leonard H. Sandler, J.
Plaintiff was evicted from her apartment under a warrant issued pursuant to a default judgment in a summary proceeding designating the occupant of her apartment as “ John Doe ”. Asserting that her true name was known to the landlord, or should have been known, and that the process was accordingly void or irregular, • plaintiff seeks to recover damages allegedly sustained as a result of the eviction, from the landlord and its agent (both of whom defaulted) and David Gold, an attorney retained by the landlord to handle the eviction.
The case presents important questions as to the responsibility of attorneys who initiate “ John Doe ” proceedings under authority of CPLR 1024 against parties whose true names are allegedly unknown.
*719 That section provides: “ A party who is ignorant in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.”
The events leading up to the eviction of the plaintiff are these:
In October, 1969, tenant, then a resident of Apartment No. 10, 308 East 106th Street, joined with many other tenants in refusing to pay rent because of an alleged lack of services. At about the same time, because of a claimed lack of heat, the tenant went to live with a relative, leaving her furniture and much of her clothing in the apartment. Tenant testified that she visited the apartment on a daily basis until a day in December, when she went to Honduras, not returning to New York until some time in February, 1970.
The evidence is not satisfactory as to the exact date on which she returned to New York, when she first visited the apartment thereafter, and how often she then came to the apartment prior to the eviction. My belief is that the tenant did not return to New York until some days after process was served in the eviction proceedings and that her subsequent visits were few in number.
Meanwhile, the defendant was retained to commence summary nonpayment proceedings against the tenant and many others in the building. His office was informed that the landlord did not know the name of the occupant of Apartment 10, as well as the names of some other tenants, apparently because of some confusion incident to a change either of ownership or management. In any event, relying on CPLR 1024, a summary proceeding was initiated against the occupant of Apartment 10, who was designated as “ John Doe ”.
According to the affidavit of the process server, service was effected on February 10, 1970 by affixing a copy of the petition and notice of petition to the apartment door, and by mailing another copy of the documents to plaintiff’s residence. Curiously, on the same day, another individual, acting at the request of Mr. Gold, allegedly visited the apartment also, spoke to “ John Doe ”, who said that “ he was not in the military service.” This affidavit, almost certainly fraudulent, was filed by the defendant with his own affidavit in compliance with the *720 requirements of subdivision 1 of section 303 of the Military Law for the entry of default judgments.
On February 19, 1970, a default judgment was entered, and a warrant issued. Following service of the 72-hour notice, the eviction took place on March 10, the tenant arriving while it was in progress.
Apparently after service of the 72-hour notice but prior to March 10, the defendant’s secretary learned the true name of the tenant, but no effort was made to stay the eviction.
Plaintiff’s claim for damages has been advanced primarily on the principle that “ an attorney who causes void or irregular process to be issued in an action, which occasions loss or injury to a party against whom it is enforced, is liable for the damages thereby occasioned.” (Fisher v. Langbein, 103 N. Y. 84, 89 [1886]).
That the warrant here issued was irregular, and that the summary proceedings involved a misuse of CPLB. 1024 is clear. The. appropriate standard of liability for a lawyer under the circumstances presents a ¡more troublesome question.
The irregularity of the process is established by the following:
First, it is clearly implicit in CPLR 1024 that the unusual authority it sanctions should not be availed of in the absence of a genuine effort to learn the true name of the party. (2 Weinstein-Korn-Miller, New York Civ. Prac., par. 1024.04.) The record contains not the slightest intimation that such effort was made either by the landlord or the defendant, or that the defendant made any inquiries whatever to ascertain what his client had done to learn the tenant’s name.
Second, the “ nonmilitary affidavit” purporting to describe a conversation with “ John Doe ”, should certainly have alerted the defendant to the possibility of learning the tenant’s name, and should have led to an instruction to return to the apartment and ask the occupant for her name.
Finally, when the true name of the tenant was reported to the defendant’s secretary, an obligation surely developed, at the very least, not to permit the eviction to proceed in the name of “ John Doe ” (2 Weinstein-Korn-Miller, par. 1024.04; Kiamescha Concord v. Pullman, 52 Misc 2d 210 [New York County, 1966]).
In considering the legal consequences of these findings, I am not inclined to extend to summary proceedings the principle of absolute liability for damage resulting from irregular process set forth in the Fisher case {supra), which had tra *721 ditionally been applied in cases involving attachments, executions and arrests. (See, e.g., Day v. Bach, 87 N. Y. 56 [1881]; Poucher v. Blanchard, 86 N. Y. 256 [1881].) That principle was evolved during a legal era in which tort liability was wholly embraced by the twin concepts of trespass and action on the case. The central concern then was with the nature of the causal sequence leading to damage, whether it occurred directly or indirectly, and not with the fault or wrongdoing of the party sought to be charged. (Prosser, Torts [3d ed.], pp. 28, 29.)
During the nineteenth century, a profound change in the law of torts gradually resulted in the body of law now familiar to us in which, as Prosser put it succinctly (p. 30): “With rare exceptions, actions for injuries to the person, or to tangible property, now require proof of an intent to inflict them, or of failure to exercise proper care.”
It is true that the concept of absolute liability for damages caused by irregular process has survived, in substantial part, this change in legal philosophy and approach. (Otto v. Levy, 244 App. Div. 349 [1st Dept., 1935]; Bornstein v. Levine, 7 A D 2d 843 [1st Dept., 1959]; Bornstein v. Silverman, 9 A D 2d 363 [1st Dept., 1959].) But I can see no sound reason for extending that principle to situations in which it had not been previously sanctioned by clear authority, and I am aware of no such authority applying -that principle to summary proceedings.
On the other hand, I find equally inadequate as applied to damage caused by void or irregular process the general rule that confines the liability of attorneys to third parties to situations in which “ the attorney has been guilty of fraud or collusion or of a malicious or tortious act.” (3 N. Y. Jur., Attorney and Client, § 78).
A more evenhanded and balanced approach is advanced with regard to executions in Corpus Juris Secundum (vol. 7, Attorney and Client, § 52): “An attorney who causes an execution to issue illegally, knowing, or having reason to know, of its illegality, is liable for the damages resulting.”
Construing the words ‘ ‘ having reason to know ’ ’ as implying good or substantial reason, I think this sets forth a standard of responsibility that gives appropriate recognition to the important conflicting interests that are involved.
Applying that standard to this case, I find that the defendant had substantial reason to know that the warrant was invalid prior to its execution although he did not in fact know.
*722 I think it appropriate to add my strong belief that the unhappy events here disclosed did not result from willful wrongdoing by the defendant, but were rather a by-product of the large volume of cases handled by his office, the resulting delegation of responsibility for paperwork to others and a failure to perceive the special problems posed by a proceeding under CPLR 1024.
The question remaining is whether the damages sustained by the plaintiff resulted from the misuse of CPLR 1024.
In this connection, I am satisfied that the process was properly served in all respects both by the process server and the marshal except for the failure to use the true name of the tenant..
On the record before me, I have concluded that the tenant’s failure to learn of the proceeding and respond to it resulted not from the “ John Doe ” designation, but rather from her own action in absenting herself from this city for a period of several months, extending, in all likelihood, to a time some days after service of the process, and her subsequent failure to visit the apartment except on an infrequent basis. The argument that she would more likely have learned of the proceeding if she had been correctly named is speculative and unconvincing in the context of the facts presented.
Having determined not to pay rent for reasons that may well have been sufficient, plaintiff must surely have contemplated the possibility of eviction proceedings. Leaving the country for several months at such a time, without making any arrangements to insure her receipt of notice, was surely an open invitation to the sad loss that occurred.
Judgment may accordingly be entered for each of the defendants.