OPINION OF THE COURT
Jay Stuart Dankberg, J.
To paraphrase the notorious Polly Adler: “when is a residential apartment not a residence?” This question is raised by a motion by respondent tenant for summary judgment, pursuant to CPLR 3212, dismissing this holdover summary proceeding upon the ground that service was not made pursuant to the dictates of RPAPL 735.
Neither counsels’ nor the court’s research has uncovered any reported decision concerning RPAPL service requirements upon a residential tenant who is living elsewhere to the knowledge of petitioner landlord; thus, is not actually physically present in the apartment concerning which litigation is about to begin. Accordingly, this is a decision of apparent first impression.
In the underlying holdover proceeding, landlord alleges tenant has breached a substantial obligation of his tenancy by allowing the apartment to be occupied by persons who are not members of tenant’s immediate family. Tenant avers that one Virginia Mason, his “fiancee, and Emily Ruth Ryan [their] 17-month old daughter” are living in the apartment.
*608 FACTS
From the submitted papers, it is undisputed that tenant, from late August, 1980 to January 29,1981, was an admitted patient at the Hazelden Foundation, Center City, Minnesota, for “long-term medical treatment”. Since then, he has been in Saint Joseph’s Hospital, St. Paul, Minnesota, “for additional treatment”.
Tenant alleges, in late August and early September, 1980, persons in the employ of his mother orally informed landlord’s employees of tenant’s Hazelden admission and of the foundation’s address and telephone number. By affidavit, tenant states that he received a lease renewal from landlord in September, addressed to him at Hazelden. Moreover, by letters to landlord, dated December 11 and 18, 1980 (prior and subsequent to service of the instant notice to cure), tenant’s requested that “you serve the petition directly on this office [Thacher, Proffitt & Wood, 40 Wall Street, New York, N.Y.], since Mr. Ryan is undergoing medical treatment in Minnesota.” Such request was not honored.
This summary proceeding was instituted by service of process in early January, 1981. The process server’s affidavit alleges “substituted” service by posting the requisite papers upon the entrance door (Jan. 7) and mailing (Jan. 8) to tenant solely at the address in litigation in New York City.
attorney’s affirmation
In support of the motion for summary judgment, tenant has submitted several affidavits and two memoranda of law. In opposition, landlord has presented two affirmations by its attorney and also two memoranda of law.
To the extent that landlord’s attorney’s affirmations attempt to allude to allegations of alleged factual matters, the submitted papers clearly indicate that he has no personal knowledge of the underlying facts. It has long been the rule in New York that an affidavit opposing a motion for summary judgment must indicate it is made by someone with the requisite personal knowledge (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 342). The affirmation of an attorney without such factual knowledge is of no *609 probative value and cannot be sufficient to raise triable factual issues in opposition to a motion for summary judgment (Israelson v Rubin, 20 AD2d 668, affd 14 NY2d 887; Aetna Cas. & Sur. Co. v Schulman, 70 AD2d 792, 794; GTE Sylvania v Jupiter Supply Co., 51 AD2d 993, 994; Davis v Shelton, 33 AD2d 707; Di Sabato v Soffes, 9 AD2d 297, 301; CPLR 3212, subd [b]). Accordingly, his two affirmations are disregarded.
Moreover, the affirmation dated March 7, 1981, is unsigned and should be overlooked on that account (CPLR 2106; see, also, General Construction Law, §§ 12, 36).
However, to the extent that these submitted papers raise issues of law, this, decision is written.
STATUTE
RPAPL 735 prescribes the manner in which process shall be served in a summary proceeding. The statute provides, in pertinent part, that
“Service of the notice of petition and petition shall be made by person delivering them * * * or by delivering to and leaving personally with a person of suitable age and discretion * * * or * * * by affixing a copy * * * upon a conspicuous part of the property sought to be recovered or placing a copy under the entrance door of such premises; and in addition * * * by mailing to the respondent
“(a) if a natural person, as follows: at the property sought to be recovered, and if such property is not the place of residence of such person and if the petitioner shall have written information of the residence address of such person, at the last residence address as to which the petitioner has such information” (emphasis supplied).
It has been held that conspicuous “service by this method consists of two separate acts — one of affixing and the other of mailing * * * service cannot be considered complete until both acts are done” (Furey v Milgrom, 44 AD2d 91, 92).
RESIDENCE
Landlord contends that the word “residence” in RPAPL 735 means the permanent home, not a temporary place of living. In order to change residence, landlord argues, an *610 intent must accompany a factual act. Here, Seward Ryan considers himself a tenant in New York City where he intends to “reside with his fiancee and her daughter as soon as the medical treatment is terminated”. Since “tenant is in Minnesota solely for medical treatment, [he] has not shown an intention to make Minnesota his home at all. He is just there to be treated *** Clearly his intention is to return to New York, to the demised premises”. Thus, since his only residence within the meaning of RPAPL 735 is at the property sought in this proceeding, landlord concludes service was proper.
In literature, Lewis Carrol had Humpty Dumpty scornfully engage in semantic falderal by defining terms: “when / use a word, it means just what I choose it to mean — neither more nor less” (Through the Looking Glass, ch 6; see, also, Clark, Letters to the Editor, NYLJ, Nov. 18, 1980, p 2, col 6; Walton, Letters to the Editor, NYLJ, Nov. 14,1980, p 2, col 6). However, to interpret particular words used in a statute, a court should examine the enactment as a whole to discern the objectives, purpose and policy underlying the statute. The words used should be given their common and ordinary meaning — a rational definition which serves, rather than defeats, the ends intended by the Legislature (MVAIC v Eisenberg, 18 NY2d 1, 3; 56 NY Jur, Statutes, §§ 164-167). Thus, where possible, the statute should be construed to suppress the evils sought to be avoided and advance the remedies intended to be afforded (Lincoln First Bank of Rochester v Rupert, 60 AD2d 193; 56 NY Jur, Statutes, § 167).
In enacting regulations for service of process, the Legislature sought to avoid the evil of unintentional defaults occurring because of lack of notice of the proceedings; the remedy to be afforded is that notice be received of the start of lawsuits so that they can be litigated on their merits. The Legislature obviously intended that potential litigants receive as much notice as possible of the commencement of a lawsuit. In fact, it would be nearly impossible to give someone too much notice of the institution of litigation. If the party receiving notice decides not to act upon it, “let the chips fall as they may.” However, the key factor is the giving of full and proper notice.
*611 There are two types of premises as to which one may begin a summary proceeding — residential and commercial. At first glance, giving the word “residence” the definition landlord would give it, one could think a residential tenant would “reside” only at one locality. If this were so, the statute might apply only to a “natural person” commercial tenant, who does not (normally) “reside” at the place of business. The Legislature, desiring that such person,receive notice of any commercial summary proceeding, decreed that when a landlord has written information of such tenant’s residence, process must be mailed there in order for service to be complete. Thus, any purported service that does not include a mailing to such residence is fatally deficient, requiring dismissal of the petition (Klagsbrun v Saunders, NYLJ, June 21, 1979, p 5, col 3, p 6, col 1; East 88th St. Corp. v Thornhill, 84 NYS2d 794; Weise v Gershman, 90 Misc 2d 799; 60 West 109th St. Corp. v Taylor, 95 NYS2d 763; see Judd Estates v Zimmerman, 127 NYS2d 68).
If this “first glance” exposed the entire panorama, the Legislature could easily have limited this aspect of the statute to commercial tenancies. It is not so limited.
As with other words that people over the years have used interchangeably — although one is no synonym for the other (see Biskind, Write It Right, NYLJ, Aug. 4,1981, p 2, col 3) — landlord here has confused the words “residence” and “domicile”. Black’s' Law Dictionary (4th ed, p 1473) states that “domicile” and “residence” are often “used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence * * * but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place [Matter of Campbell, 216 Minn 113], while domicile requires bodily presence in that place and also an intention to make it one’s domicile. In Re Riley’s Will * * * 148 Misc. 588. ‘Residence’ demands less intimate local ties than ‘domicile,’ but ‘domicile’ allows absence for indefinite period if intent to return remains.”
*612 Since the cases, cited by the law dictionary are decades old (e.g., Matter of Riley, supra, was decided in 1933), it may safely be assumed that the Legislature was aware of the difference between “residence” and “domicile” in 1962 at the time of enactment of RPAPL 735 (see Catalanotto v Palazzolo, 46 Misc 2d 381, 383).
The time has long passed from feudal days when a tenant-farmer resseant du fief Today we are not obligated to dwell on our “lord’s land” and not depart from it. We can move about freely; for good reason, for bad reason, or for no reason at all. We may even establish more than one place of residence; keeping, however, only one domicile.
That the statute’s use of “residence” applies to residential tenancies is clear since a residential tenant might go on an extended vacation (see Goodman v Solack Estates, 78 AD2d 513; Solack Estates v Goodman, 78 AD2d 512; Nelson v Kaufman, NYLJ, Nov. 24, 1978, p 12, col 1; Goodman v Solack Estates, NYLJ, June 3, 1981, p 6, col 3); might travel for prolonged business reasons; might leave for longtime unknown reasons (see Smyrl v 107 West Apt. Corp., NYLJ, Sept. 26, 1980, p 5, col 5); and might depart for protracted medical or other personal reasons (see Trustees of Columbia Univ. v Veleber, NYLJ, Dec. 18,1980, p 11, col 2), thereby establishing a residence, although temporary, far away from the usual dwelling place.
In fact, a residential tenant, while having only one domicile, might have two or more permanent residences. Thus, when a statutorily protected tenant in New York City changes domicile, under both rent control (Rent and Eviction Regulations of City of New York, § 18) and rent stabilization (Code of the Real Estate Industry Stabilization Assn. of New York City, Inc., §54, subd [e]), if a tenant maintains the “primary residence” (i.e., domicile) at some place other than at the statutorily registered apartment, he may be evicted from such apartment.
Thus, since the word “residence” must be defined in light of its context within RPAPL 735 and in consideration of the purpose of that statute (see Morek v Smolak, 245 App Div 355, 356), it is clear that the meaning landlord would give it would unduly restrict RPAPL 735; would create a limitation the Legislature did not intend.
*613 Therefore, it is held that the word “residence” in RPAPL 735 means the particular locality where the tenant is actually living at the time the summary proceeding is commenced. If, because the tenant is actually living other than at the premises as to which possession is sought, landlord resorts to substituted service, process must be mailed to such other address if the landlord has written information thereof. If the tenant is living there, that is the place where mail will be received and notice obtained of the litigation.
In the instant proceeding, the submitted papers demonstrate that this tenant, from August, 1980 to the end of January, 1981, established a temporary residence at the Hazelden Foundation in Center City, Minnesota, for medical reasons. That was the place where tenant was “actually residing” when this summary proceeding was begun by service of process only at his New York City address in early January, 1981.
WRITTEN INFORMATION
The only question remaining is whether landlord had “written information” of the Minnesota residence address of tenant prior to starting this holdover proceeding.
Tenant alleges, and landlord does not affirmatively deny, that two of his mother’s employees gave landlord actual notice of the Hazelden Foundation’s address; the lease renewal was sent to him at Hazelden by landlord; and tenant’s attorney sent two written communications informing landlord that tenant was “in Minnesota”.
From these unrefuted statements, the court finds that landlord, prior to commencing this proceeding, had “written information” of tenant’s Minnesota residence address sufficient to satisfy the statutory standards of RPAPL 735. However, landlord did not mail the petition to tenant there.
Under these facts, the court does not determine whether a reasonably prudent landlord has an obligation to cause a good faith inquiry to be had of a tenant’s exact address, if such landlord lacks written knowledge, in whole or in part, of the exact address, but is aware (albeit from oral information) that tenant is not presently residing at the premises *614 whose possession is sought in an about-to-be-commenced summary proceeding (see Chavez v Nevell Mgt. Co., 69 Misc 2d 718; Matthews v Schusheim, 42 Misc 2d 176, 177; 2 Weinstein-Korn-Miller, NY Civ Prac, par 1024.04; CPLR 1024).
DECISION
From the above, the court’s duty is crystal clear and palpably mandated. Here, the words of the statute are plain and unambiguous. Irrespective of the fact that tenant had actual notice of the pending proceeding (Klagsbrun v Saunders, NYLJ, June 21, 1979, p 5, col 3, supra), landlord did not comply with the mandate of RPAPL 735 by serving tenant by mail with this holdover proceeding where he was residing in Minnesota.
“The result of the dismissal of the action may appear harsh, but a contrary result might produce even greater evils. [If this court were to find service proper, it] would render the further act of mailing unimportant and destroy the legislative intent of treating both acts of equal standing in prescribing a mode of service” (Furey v Milgrom, 44 AD2d 91, 93, supra).
This decision, moreover, imposes no Draconian obligation upon a process server. “The process server was acting for the landlord and if he did not know the address, the duty was on the landlord to give that information to him” (60 West 109th St. Corp. v Taylor, 95 NYS 763, 766, supra).
A dismissal is in accordance with the only similar prior reported case that the court’s research has uncovered. In F & P Mgt. Co. v Bergere (222 NYS2d 962), a long-time New York City domiciled tenant went to Paris, France, got ill and, thus, did not mail the rent. Tenant claimed building employees had been informed of her visit in order to forward her mail, care of the American Embassy in Paris. The American Consul subsequently wrote landlord, advising that the rent would be delayed. Conspicuous service of process was made only in New York City, 11 days after the Consul wrote. The Municipal Court, proceeding under section 1421 of the Civil Practice Act (predecessor to RPAPL 735), determined that such service was invalid and restored tenant to possession of the premises.
*615 Accordingly, for the reasons stated, the motion is in all respects granted and the petition dismissed.