OPINION OF THE COURT
Richard J. Montelione, J.
Background
An inquest took place on September 7, 2016 before the Honorable Devin P. Cohen which resulted in the issuance of a judgment of possession and warrant of eviction. The respondent tenant brings this motion to vacate the judgment of possession and warrant of eviction and to restore this matter to the calendar, asserting that it never received the predicate notices or the notice of petition and petition.
*273 The lease between the parties commenced on September 1, 2013 and was set to expire on August 31, 2018. Since the inception of the lease, the tenant never obtained, and prior to the issuance of the notice to cure, landlord never requested, tenant to provide proof of commercial insurance as required under paragraph 28 of the lease.
The tenant conducts its retail business at 821 6th Avenue, New York, NY 10001. The lease at issue involves a warehouse. The tenant warehouses items used in its retail business on the demised premises which is located at 1001 Irving Avenue, right side ground floor warehouse, in Brooklyn, NY 11237. At oral argument there was no dispute that tenant only accesses the warehouse every day in the mornings for about one hour between 8:10 a.m. and 9:10 a.m. Tenant’s affidavit in support also states as much.
Five-Day Notice to Cure
The tenant asserts that the five-day notice to cure dated June 9, 2016, purportedly served by certified mail on June 10, 2016, addressed to 1001 Irving Avenue (right side ground floor), Brooklyn, NY 11237, was not received because the business was closed at the time of the attempted delivery, which was July 6, 2016 (exhibit B). The five-day notice to cure dated June 9, 2016 provided for a cure date of no later than June 20, 2016. In other words, the very first attempt by the U.S. Postal Service (U.S.P.S.) to actually deliver the five-day notice to cure, according to U.S.P.S. tracking records, was a date subsequent to the date by which the tenant had to cure.
The tenant asserts that a second copy of the notice to cure dated June 9, 2016, purportedly served by certified mail addressed to 821 6th Avenue, New York, NY 10001, its actual place of business, which was allegedly “left with (an) individual” on June 22, 2016 (exhibit B), was never received. The tracking information from U.S.P.S. provided to the court by the tenant clearly shows that even if the notice to cure was in fact received on June 22, 2016 at the second address, the tenant had absolutely no opportunity of curing the default because the date by which the default had to be cured was June 20, 2016 (exhibit C [“that as per section 19 (obtain insurance) you are required to cure the aforesaid violations of your tenancy within FIVE (5) days of the service of this notice upon you, which is no later than 6-20-16”]).
In summary, each notice to cure, even if actually received by the tenant on the dates as reflected in the official records of the *274 U.S. Postal Service, was received subsequent to the date tenant had to cure.’
Three-Day Notice of Termination
The court has reviewed its file and reviewed the affidavit of service of the three-day notice of termination dated June 23, 2016 and the certified mail receipts showing a mailing of June 24, 2016, to the same addresses as the notice to cure. It appears that the notice of termination, served under U.S. Postal Service certified mail receipt 7016 0910 0000 1702 0730, timely reached the tenant at its retail space located at 821 6th Avenue, New York, NY 10001 on or about June 28, 2016. It also appears the notice of termination, served under U.S. Postal Service certified mail receipt 7016 0910 0000 1702 0723 was not delivered to 1001 Irving Avenue, right side ground floor, Brooklyn, NY 11237, until subsequent to the termination date of July 2, 2016.
Notice of Petition (NOP) and Petition (P)
There was an attempt to serve the notice of petition and petition on July 6, 2016 at 4:58 p.m. at the demised premises. Subsequently, on July 7, 2016 at 11:29 a.m., the notice of petition and petition were served by conspicuous service. There were additional mailings via certified mail. There is no tracking information provided to the court regarding the certified U.S. mailings of the notice of petition and petition.
Postcard from the Court to Tenant
The court’s postcard (exhibit G), properly addressed to the tenant at the demised premises, giving notice to the tenant that the case was adjourned to September 7, 2016 at 10:00 a.m. in Part 52—Commercial, Room 603 for inquest, was *275 returned to the court with the official postal notification of “RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD.”
Unrebutted Allegations of Tenant
The landlord does not dispute the following facts: the landlord was aware that the primary place of tenant’s business was located at 821 6th Avenue, New York, NY 10001 and the landlord picked up the rent check every month at this location until July 2016; the tenant is at the warehouse (the demised premises) from 8:10 a.m. to 9:10 a.m. every day; there is no one usually on the demised premises outside the hours of 8:10 a.m. to 9:10 a.m.; except for the notice eventually received by the tenant, the landlord never requested proof of insurance; the first time tenant learned of the demand for proof of insurance was on July 1, 2016 when a certified letter from the landlord was received with a three-day notice of termination; liability insurance was purchased on July 1, 2016 with a policy number BP004571P2016 from City Link Insurance Agency, Inc., insuring the tenant and the landlord as an additional insured.
Landlord’s Opposition Papers
The landlord’s attorneys’ affirmation in opposition makes reference to a final judgment of possession based on a nonpayment of rent and “respondent’s failure to satisfy the judgment amount.” This is factually incorrect as the petition is clearly one for holdover without any claim for rent or use and occupancy and there is only a judgment for possession without any reference to a monetary award to the tenant. Inasmuch as the attorneys’ affirmation makes reference to an amount claimed without any basis in the petition and there is no affidavit from anyone with personal knowledge, or a cross motion for any relief, the landlord’s attorneys’ affirmation is a nullity regarding either a claim for rent or attorneys’ fees (see US Natl. Bank Assn. v Melton, 90 AD3d 742, 743 [2d Dept 2011]).
“An attorney’s affirmation that is not based upon personal knowledge is of no probative or evidentiary significance (see JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 384-385 [2005]; Zuckerman v City of New York, 49 NY2d 557, 563 [1980]; Palo v Principio, 303 AD2d 478, 479 [2003]; Hirsch v Morgan Stanley & Co., 239 AD2d 466, 467 [1997])” (Warrington v Ryder Truck Rental, Inc., 35 AD3d 455, 456 [2006]).
*276 Legal Analysis
The Notice to Cure
After reviewing the notice to cure and the tracking information provided by the tenant, it is clear the petitioner landlord timely and properly served the notice to cure by certified mail pursuant to the lease. It is equally clear, however, that the tenant literally had no opportunity to timely cure its default because the notice was not received until after the date by which to cure had passed. Tenant never had an opportunity, prior to June 20, 2016, to simply obtain a commercial insurance policy. Even the usual application for a Yellowstone injunction could not be employed here because the date to cure had passed. In Long Is. Gynecological Servs. v 1103 Stewart Ave. Assoc. Ltd. Partnership (224 AD2d 591, 593 [2d Dept 1996]), the Court held that the following must be shown to obtain a Yellowstone injunction by the tenant:
“(1) it holds a commercial lease; (2) it has received from the landlord a notice of default, a notice to cure, or a threat of termination of the lease; (3) the application for a temporary restraining order was made prior to the termination of the lease; and (4) it has the desire and ability to cure the alleged default by any means short of vacating the premises (see, First Natl. Stores v Yellowstone Shopping Ctr., supra; Matter of Langfur, 198 AD2d 355 [(1993)]; Stuart v D &D Assoc., 160 AD2d 547 [(1990)]).”
Either the tenant could have cured its default by obtaining a commercial insurance policy as shown by the copy of the proof of insurance submitted by the tenant on the same date it received the notice to cure, or the tenant could easily have prevailed in its application for a Yellowstone injunction because it holds a commercial lease (exhibit A) and the fact that it obtained a commercial policy meets the “desire and ability to cure” if made prior to the cure date (see Long Is. Gynecological Servs. at 593).
The Court in Matter of ATM One, LLC v Landaverde (307 AD2d 922 [2d Dept 2003], affd 2 NY3d 472 [2004]) was faced with a somewhat analogous situation when a 10-day notice to cure the tenant’s default under a residential lease was mailed to the tenant more than 10 days before the last date to cure but not received until nine days before the cure date. The notice to cure was pursuant to 9 NYCKR, 2508.1, which mandates *277 such notice prior to the commencement of a holdover proceeding based on a tenant default.
The Court in Matter of ATM One, LLC u Landaverde determined that the date to cure had to be stated, but there was no mention in the regulation which specified when the period to cure commenced and whether this period commenced,
“(a) at the moment that the notice was delivered to an agent of the postal service or deposited in a receptacle under the exclusive control of the postal service, (b) at the moment that the notice was delivered to the address of the tenant as set forth on the envelope in which the notice is mailed, or (c) at the moment that the tenant personally opened the envelope and received the notice into his/her hands after its delivery to his/her address” (307 AD2d at 923).
The Court held that under the statute the tenant must have at least 10 days to cure and the time such period commenced was the date the notice was received. (See Matter of ATM One, LLC v Landaverde.) The Court of Appeals affirmed (Matter of ATM One, LLC v Landaverde, 2 NY3d 472 [2004]), basing the commencement of the time period by adding five days for mailing. Although the Court of Appeals did not extend CPLR 2103 (b) (2) to summary proceedings it nonetheless added the five days as a practical solution when notice is served by regular U.S. mail.
This court is well aware of the important differences between residential leases and commercial leases, but the logic concerning the time to cure, whether it is pursuant to a regulation or a term of the lease, is the same—to give the tenant time to cure a default prior to termination of the lease. This court finds that in the instant matter the time to cure does not commence until the date the tenant receives the notice to cure. The difference between Landaverde and the instant matter is Landaverde presumes the untimely receipt of the notice to cure based upon the five days added for mailing, while the court in the instant matter bases it upon the records of the U.S.P.S. {cf. Metal Tek Prods, v M&S Props. L.P., 2007 NYLJ LEXIS 4224 [where the court held that in a commercial lease context, the cure period does not begin until receipt of the notice to cure]). Here, the tenant had absolutely no time to cure because the undisputed documentary evidence from the Post Office confirms that the tenant did not receive either one of the two notices to *278 cure by certified mail until the time to cure had passed (exhibit B). The Court, in a practical application of counting the time to cure from the date of receipt of the notice, in Matter of ATM One, LLC v Landaverde (307 AD2d 922, 924-925 [2d Dept 2003]), stated:
“The principal advantage of the more practical construction placed on the regulation by the Appellate Term is that it avoids the possibility that, in a case involving an abnormally extended delay in the delivery of the mail, a tenant might not be told of the date within which he or she may cure a violation until after that date has actually passed, a possibility that, under the construction advocated by the dissent, cannot be excluded. When the proper construction to be placed on a regulation or statute is open to debate, we should adopt that construction which more reliably tends to avoid ‘results which are absurd, unreasonable or mischievous’ (People v Dozier, 78 NY2d 242, 250 [1991], citing McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141, 143, 145, 146, 148).”
This court agrees that to hold otherwise would mean “results which are absurd, unreasonable or mischievous” (Matter of ATM One, LLC v Landaverde, 307 AD2d 922, 925 [2d Dept 2003], citing People v Dozier, 78 NY2d 242, 250 [1991], citing McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141, 143, 145, 146, 148).
Both notices are therefore defective because they were not received by the tenant with any time to actually cure the default. The court also notes the obvious problems with the delay in delivering the certified mail, which took more than a month, and the “return to sender” of the court’s own postcard (exhibit G). The photo provided to the court of the entry door of the demised premises shows a rolling metal door which is closed and without any mailbox or means of inserting mail into the building, a condition this court infers is known to both parties.
Service of the Notice of Petition and Petition
In light of the fact that both the conspicuous service of the NOP and P and the one attempt made prior to service occurred at the demised premises at a time other than between 8:10 a.m. and 9:10 a.m., which was the only time the tenant was at the demised premises and a time known by the landlord to be *279 the only time the tenant was at the demised premises, and that the landlord had actual knowledge of the tenant’s retail store address which is the actual place of the tenant’s business, this court must determine whether the service of the NOP and P meets the requirements of RPAPL 735.
Under “[RPAPL] 735. Manner of service; filing; when service complete”:
“1. Service of the notice of petition and petition shall be made by personally delivering them to the respondent; or by delivering to and leaving personally with a person of suitable age and discretion who resides or is employed at the property sought to be recovered, a copy of the notice of petition and petition, if upon reasonable application admittance can be obtained and such person found who will receive it; or if admittance cannot be obtained and such person found, by affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered or placing a copy under the entrance door of such premises . . .
“(a) if a natural person . . .
“(b) if a corporation, joint-stock or other unincorporated association, as follows: at the property sought to be recovered, and if the principal office or principal place of business of such corporation, joint stock or other unincorporated association is not located on the property sought to be recovered, and if the petitioner shall have written information of the principal office or principal place of business within the state, at the last place as to which petitioner has such information, or if the petitioner shall have no such information but shall have written information of any office or place of business within the state, to any such place as to which the petitioner has such information. Allegations as to such information as may affect the mailing address shall be set forth either in the petition, or in a separate affidavit and filed as part of the proof of service.” (Emphasis added.)
This court starts from the premise that RPAPL 735 does not require a diligent effort prior to service through conspicuous service (see Dan M. Blumenthal, Supp Practice Commentary, McKinney’s Cons Laws of NY, RPAPL 735). However, the lower standard still requires a “reasonable application,” and this court finds as a matter of law that reasonable application is not made when the process server makes one attempt at service *280 before conspicuous service during hours when it is known to the landlord that the tenant is not available. (See Dolan v Linnen, 195 Misc 2d 298 [Civ Ct, Richmond County 2003] [where court held “reasonable application” means some expectation of success]; see also UNS Mgt. Assoc., Ltd. v JCH Realty Corp., 20 Misc 3d 1112[A], 2008 NY Slip Op 51329[U], *3 [Nassau Dist Ct 2008] [“under the circumstances, is it fair to say that the manner of service used is one that, objectively viewed, is calculated to adequately and fairly apprise the respondent of an impending lawsuit” (quoting 417 E. Realty Assoc. v Ryan, 110 Misc 2d 607 [Civ Ct, NY County 1981])]; Top Value Homes, Inc. v Continental Petroleum Corp., 2 Misc 3d 1007[A], 2004 NY Slip Op 50169[U] [Nassau Dist Ct 2004].)
The simple direction to the process server to serve between the hours of 8:10 a.m. and 9:10 a.m. would have met the very low mark of “reasonable application.” Further, the landlord has actual knowledge of tenant’s retail store address and there was no attempt to personally serve the NOP and P at this address (see RPAPL 735 [1] [b]). The landlord picked up the rent check from the commencement of the lease until July 2016 at the office of the tenant. The court could not review the certified mail receipts for the NOP and P because they were not provided to the court.
This court retains jurisdiction even after execution of the warrant and may vacate the warrant and restore the tenant to possession when the tenant has shown adequate grounds to vacate the default, the warrant, and the judgment of possession (see Matter of Brusco v Braun, 84 NY2d 674 [1994]).
Based on the foregoing, the court finds there is no need to hold a post-eviction hearing. The respondent’s motion to vacate the judgment of possession and warrant of eviction is granted and the petition is dismissed. Further, the tenant is to be restored to the premises forthwith.

 The court, in its discretion, takes judicial notice of the U.S. Postal Service’s official website (https://tools.usps.com/go/TrackConfirmAction_input) which allows for tracking of certified mail, which was provided by the tenant and which is publically maintained by the U.S. Postal Service (see Matter of LaSonde v Seabrook, 89 AD3d 132, 137 n 8 [2011] [holding that “(t)his Court has discretion to take judicial notice of material derived from official government Web sites such as those generated by the New York State Department of State”]; Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d 13, 19-20 [2009] [holding that judicial notice was taken of “public documents that are generated in a manner which assures their reliability” such as “material derived from official government Web sites”]; Des Fosses v Rastelli, 283 App Div 1069, 1070 [1954] [“This court has taken judicial notice of the deed in the foreclosure action . . . recorded April 15, 1953”], affd 308 NY 850 [1955]).