Jims Realty LLC v Roland (2025 NY Slip Op 51716(U))

[*1]

Jims Realty LLC v Roland

2025 NY Slip Op 51716(U)

Decided on October 27, 2025

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 27, 2025
Civil Court of the City of New York, Kings County

Jims Realty LLC, Petitioner,

against
Natasha Roland AKA Natasha Tekola Martinez, Respondent, 
 Lorenzo Roland, Respondent-Undertenant.

Index No. 052176-19

Shivers & Associates LLC (Charles A. Loveless, Esq.), for petitioner
Brooklyn Defender Services (Evan Ma, Esq, Andrew Eichen, Esq.), for respondent Natasha Roland
Legal Aid Society (Zoe Farkas, Esq. Dawn Kelly Esq.), for respondent Lorenzo Roland

Karen May Bacdayan, J.

This is a non-primary residence holdover proceeding commenced in January 2019 against respondent Natasha Roland ("Roland" or "respondent") as the tenant of record, and respondents Leslie Miles Hinds, Racine Roland, Lorenzo Roland ("Lorenzo"), "John Doe," and "Jane Doe" as undertenants. Petitioner advances that between January 1, 2017 and December 31, 2018, the date Roland's last Rent Stabilized renewal lease expired, Roland has not maintained a substantial, physical nexus to Apt. 4C (a/k/a C4) for living purposes. Both Roland and Lorenzo are represented. Roland defends the proceeding on the basis that this is, in fact, her primary residence; Lorenzo seeks to establish his right to succeed to the lease in the event Roland does not prevail.
The predicate notice of non-renewal of lease ("Golub notice") alleges Roland has "not been residing at the subject premises as [her] primary residence since at least approximately March 2010, although you have continuously been executing rent stabilized renewal leases." (NYSCEF Doc No. 53 at 7, Golub notice ¶ 1.)[FN1]
The Golub notice alleges in relevant part upon information and belief:
• The undersigned has not seen you at the subject premises and building for several years (the Golub notice is signed by Akiva Metal, Vice President);
• Roland's primary residence is at 5661 Columbia Road, #302, Columbia, MD, 21044;
• Roland purchased a condominium at 3857 W. Maypole Avenue, Unit 1, Chicago, IL 60624 on December 10, 2009;
• Roland resided at 1254 S Blue Island Avenue, Unit 101, Chicago, IL 60608 from approximately March 2010 through November 2014;
• Roland provided other addresses "on official documents and legal matters" in Maryland and Chicago "for over the past twenty (20) years," including but not limited to 4310 Flint Hill Drive, Apt 203, Owings Mills, MD 21117, and 195 N. Harbor Drive, Apt 5304, Chicago, IL 60601;
• Roland had two vehicles each registered at 1254 S Blue Island Avenue, Unit 101, Chicago, IL 60608: a 2008 Lexus IS250 — Sedan 4 Door from March 16, 2010 to March 31, 2011, and a White Tan 2010 Lexus RX — 4 Dr Wagon SUV from October 26, 2010 to July 15, 2015;
• Roland appeared in District Court in Baltimore County, Maryland, on November 17, 2000, for two driving-related offenses, with a record address of 5661 Columbia Road, #302, Columbia, MD, 21044;
• Roland was charged with theft on March 2, 2006, with a record address of 5661 Columbia Road, #302, Columbia, MD, 21044;
• Roland was charged with two counts of theft, two counts of making false statements to police, and one count of disturbing the peace on November 21, 2008, with a record address of 4310 Flint Hill Drive, Apt. #203, Owing Mills, MD 21117;
• Roland was charged with two driving-related offenses on July 18, 2025, with a record address of 4310 Flint Hill Drive, Apt. #203, Owing Mills, MD 21117;
• Roland had a Maryland driver's license that expired on July 31, 2001, with a record address of 4310 Flint Hill Drive, Apt. #203, Owing Mills, MD 21117;
• Roland had a subsequent driver's license in Maryland with a record address of 5661 Columbia Road, #302, Columbia, MD, 21044;
• Roland has an active cell phone account with a record address of 5661 Columbia Road, #302, Columbia, MD, 21044 (this allegation was not made upon information and belief); and
• Roland was a "Contact/Manager/Member" of a company called "World Teko LLC" from December 29, 2010 through January 23, 2017, with a record address of "195 N Harbor Drive, Apt #5304[.]" (this allegation was not made upon information and belief)
The trial commenced on October 21, 2025, and continued over three consecutive days. For the following reasons, the proceeding is dismissed.
THE TRIAL
Petitioner's Presentation of Its Prima Facie Case
Akiva Metal ("Metal"), Vice President of Jims Realty, LLC was sworn in and testified as petitioner's first witness. His duties as Vice President include "legal," rent collection, and repairs. His office is located at 438 Kingston and is across the street from the subject building. The tenant of record of Apt. 4C is Natasha Roland. Metal identified her as the person sitting at respondents' table next to her attorney. Metal testified that there were always other people paying [*2]rent for the apartment and in the apartment. One time someone came to the office with a renewal lease and wanted it in their name. He asked for identification, and that person was not Natasha Roland. Next day Roland telephoned him from a Maryland area code. His suspicions were aroused, and he asked petitioner's attorney to do a search and discovered that Roland had residences elsewhere. Petitioner's attorneys prepared a notice of nonrenewal of the lease, colloquially known as a Golub notice. Roland did not vacate at the end of her lease, and petitioner requested that their attorneys commence this proceeding. To date, Roland has not vacated or surrendered the apartment.
On cross examination, respondent elicited that Metal has not offered Roland a lease since the last lease expired on December 31, 2018. At some point during the term of the last renewal lease, someone, not Roland, came to his office to renew the lease for Apt. 4C. There were always other people dealing with paying rent and the request for a renewal lease by someone other than Roland was the "trigger." Metal testified that, until that "trigger," he did not have personal knowledge of Ms. Roland, explaining that he manages over 100 tenants. On re-direct examination, Metal testified that he had suspicions about where Roland was residing. Those suspicions were supported by the results of an investigation.
Petitioner next called respondent, Lorenzo Roland, to the witness stand. Lorenzo was sworn in and testified that he lives in the subject apartment, that Roland takes helps to take care of him, and that he is aware that Roland used to take her mother to Maryland for surgeries. Lorenzo further testified that he has never been to Maryland, and that he never accompanied Roland to Maryland. He denied that Roland has ever lived in Maryland. On cross examination, Roland's attorneys elicited the following testimony: Lorenzo lives at 451 Kingston, he has "always" lived there. In 2017, his siblings, including Roland, lived in apartment 4C with their mother. Their mother passed away December 3, 2017 "right at the door of the apartment." In 2018, Lorenzo was living in Apt. 4C with Roland. On re-direct examination, Lorenzo testified that the subject apartment comprises three bedrooms, a kitchen, and one bathroom.
Petitioner then called Natasha Roland as his next and final witness. Ms. Roland was sworn in. Throughout the trial, Roland was consistent and credible. The following testimony was elicited from Roland over the course of three days.
Roland's Testimony
Roland testified credibly on petitioner's direct examination that "the government" obtained the Maryland ("MD") apartment for her at the request of her then husband, Alberto ("Alpo") Martinez. Martinez was "locked up" in 1992 for numerous crimes, and turned government witness while in prison. Roland did not wish to enroll in the witness protection program after Martinez was released so she accepted the government's offer of a place other than Brooklyn where she could seek refuge should she feel afraid or anxious about retaliation from her husband's former associates, whom Roland characterized as "dangerous" people. Roland testified that she initially stayed at 4310 Flint Hill Drive, Apt 203, Owings Mills, MD 21117 with her cousin Shamiqua who wanted another person on the lease because she had just had a new baby. This part of the narrative is not altogether clear.[FN2]
However, subsequent to the Flint [*3]Drive address—and for years while Martinez was testifying against his former contacts and while Martinez was in witness protection—Roland utilized Apt. 302 at 5661 Columbia Road, Columbia, MD for reasons related to her own protection and peace of mind.
Between 2016, when her mother's cancer returned, until her mother died in Brooklyn in 2017, Roland increasingly utilized the apartment as a place for her and/or her mother to stay when her mother was receiving medical care at Johns Hopkins and Mercy Medical in MD. She utilized Apt. 302 in Columbia, MD for these purposes because she "had access" to it. Roland kept the MD apartment in order for her mother to receive cancer treatment that Roland felt was superior to that available in Brooklyn. All of her mother's doctors were in MD. She and her mother would pack a bag and travel to MD for a weekend, or a week, by bus or car. Her mother would rest in the MD apartment on Columbia Road after chemotherapy sessions. Roland was not always with her mother when her mother traveled to MD. Her mother had a nurse, and the cancer center would provide transportation to and from doctor's appointments. Despite the time her mother spent in MD receiving medical care, Roland considered 451 Kingston Avenue, Apt. 4C to be her mother's residence. Despite the time her mother spent in MD receiving medical care, Roland considered 451 Kingston Avenue, Apt. 4C to be her mother's residence. Roland never ceased thinking of Apt. 4C in Brooklyn as her "home."
Roland's mother passed away on December 3, 2017 at 451 Kingston Avenue, Apt. 4C. When her mother passed away, she believes she obtained her mother's death certificate from the funeral home. Roland does not know why the Columbia, MD address appears as her mother's address on the death certificate. She does not know why the death certificate lists her as the informant with an address of 5661 Columbia Road, Apt. 302, Columbia, MD; but her "home" is 451 Kingston Avenue, Apt. 4C, Brooklyn, New York. She could not explain the inconsistencies between her testimony and the death certificate, but she testified credibly that she also could not explain why the funeral was held at a location that was not the location set forth on the death certificate.
Roland denied that the apartment in MD is "nicer" than her apartment in Brooklyn, testifying that the only "amenity" she is aware of related to the MD apartment is a garage space which her step-son currently uses for storage. She does not have a car. She does not know whether there are amenities such as, e.g. a basketball court, or a swimming pool, as set forth in the lease for Apt. 302, Columbia Road, MD (which Roland testified she did not read thoroughly before signing). Roland is "very hands on" with Apt. 4C in Brooklyn, and has made numerous repairs and improvements to the apartment with which two of her witnesses were involved.
Further placing Roland at the Kingston Avenue apartment, respondent was personally served with papers on February 21, 2018, and litigated nonpayment proceedings in 2017 and 2018. Access dates were agreed to in September 2018, and Roland was present. Workers came numerous times. The repairs were completed in May 2019, and she is happy with the work that was done. She bought her own materials, dealing with the live-in superintendent at the time, Brewster. She bought her own floors, she renovated the bathroom. "There were a lot of improvements."
Roland credibly testified that she had been to Maine, "once in [her] life." In 2018, she rented a car to drive to Maine in order to meet her then husband, Albert Martinez, and a producer who wanted to make a documentary about Martinez. Martinez was in the witness protection program at the time. Likewise, Roland credibly explained her connection to Chicago, Illinois. Roland testified that her boyfriend resides in Chicago, and she visits him there.
Roland owns a company, World Teko, LLC the business of which is to provide clothing and styling for performing artists during photo and video shoots. During the relevant time period, Roland was charged numerous times by Bloomingdales, Macy's, Neiman Marcus, etc., all within the tri-state area, when she "pulled" clothing for shoots and videos. "Pulling" involves leaving a credit card for the clothing which is charged, and then refunded after the shoot or video when the clothing is returned. These purchases and returns were often in rapid succession. World Teko, LLC is a for-profit company, but it is not profitable. Roland is not well versed in the incorporation of World Teko, why it is incorporated in Illinois, or why or where documents are filed on behalf of the company. She explained that her boyfriend and his lawyer incorporated World Teko for her in Illinois as a gift.
Roland consistently and repeatedly testified that she considers 451 Kingston Avenue, Apt. 4C to be her "home" and her primary residence, and that she never intended to relocate to the MD apartment provided to her by the government when her husband turned government's witness. Petitioner offered minimal evidence in support of its case. At this juncture, respondent moved for a directed verdict. Out of an abundance of caution, and choosing to make this decision based further testimonial evidence, the court reserved decision.
Roland's direct testimony for her case revolved around Bank of America, Chase Bank, and AMEX credit card statements which she characterized as not necessarily indicative of her whereabouts given that she pays for most purchases in cash. While petitioner attempted to demonstrate that during the relevant time period, respondent rented cars in MD for long periods of time, implying that Roland was located in MD during those periods, Roland sufficiently rebutted this implication with the very same records which demonstrated that during the months in question, an overwhelming amount of her purchases were made for her business at malls in Pennsylvania, New Jersey, and Connecticut, a manageably short drive to and from Kingston Avenue, Brooklyn on any given day. She also received parking tickets in Brooklyn during the rental periods. Taken as a whole, and bolstered by her credible, consistent testimony, the bank records were not a critical, determinative factor.
Roland's witnesses were credible and consistent with Roland's testimony.
Leslie Hinds, Roland's brother, testified that he came back to live at 451 Kingston Avenue, Apt. 4C with Roland in the beginning of 2017. He moved to his own place in New Jersey in 2018. Roland was "feisty" with him, always suggesting that he was a "grown man" and should get a place of his own.
Luis Morales, who has resided in the building down the hall from Roland since 2009, was sworn in as a witness for Roland and testified credibly that during the relevant time period, he saw Roland two to three times a week doing laundry and going to the grocery. In 2017, to the best of his recollection, he would see Roland "mostly daily." This was also the case in 2018: "[D]aily or once twice a week." During 2017 and 2018 he spent every day and every night in his apartment. He hasn't had a vacation since 2011. Morales characterized himself as "a nosey neighbor" and recalled that he would stop by Apt. 4C regularly to see how the renovations to the apartment were going. They would have friendly conversations. Morales testified that when Roland's mother was alive, the apartment was "kind of unkept." After her mother passed away, he guessed that Roland had time to work on the apartment. The renovations to Apt. 4C took "about two years." He has no knowledge of Roland living anywhere else in 2017 or 2018. On cross examination, Morales testified slightly differently, but not inconsistently enough to impugn his credibility. Morales testified on cross examination that during the year of 2017 he would see [*4]Roland weekly. He then testified that he saw Roland frequently, not every week, but more than once a month during the relevant time period.
Denzel Williams, who was hired to replace sheet rock, plaster, and paint Apt. 4C, credibly testified that he worked in Roland's apartment for about a year during the relevant time period herein. His work concluded in or around February 2018. Williams testified that he was hired by the superintendent, Brewster, who paid him in cash to make Roland's apartment "beautiful, and so that's what [he] did." He was inside the apartment consistently for about a year, daily Monday through Friday unless he took personal time or it was a holiday. Roland was always the one to provide him access. She would articulate what she wanted done. Roland wanted to make sure everything was done right.
In 2021, Roland's husband "Alpo" Martinez was shot and killed when he returned to Harlem while in witness protection. At this time, the MD apartment was still available to Roland, and while she feels less afraid now, she remarked, "You never know." The Maryland apartment continues to be leased in Roland's name to this day. Her stepson resides there now with his girlfriend and their baby. She is hoping that the lease can eventually be put in his name.
DISCUSSION
Section 2520.6 (u) of the Rent Stabilization Code provides that "[a]though no single factor shall be solely determinative, evidence which may be considered in determining whether a housing accommodation subject to this Code is occupied as a primary residence shall include, without limitation, such factors as listed below: (1) specification by an occupant of an address other than such housing accommodation as a place of residence on any tax return, motor vehicle registration, driver's license or other document filed with a public agency; (2) use by an occupant of an address other than such housing accommodation as a voting address; (3) occupancy of the housing accommodation for an aggregate of less than 183 days in the most recent calendar year, except for temporary periods of relocation pursuant to section 2523.5(b)(2) of this Title; and (4) subletting of the housing accommodation." (Rent Stabilization Code ("RSC") [9 NYCRR] § 2520.6 [u].) RSC 2523.5 (b) (3) provides list of excusable absences, none of which apply to Roland with the exception of romanette (vi) which states that a tenant may explain their absence from their rent stabilized apartment if they have "other reasonable grounds[.]"
In a nonprimary-residence holdover proceeding, the landlord has the burden of showing, by a preponderance of the evidence, that the tenant did not use the subject premises as a primary residence. (See Glenbriar Co. v Lipsman, 5 NY3d 388 [2005]; 111-39 76th Rd., LLC v Rothman, 76 Misc 3d 126[A], 2022 NY Slip Op 50771[U[ (App Term 2d, 11th and 13th Jud Dists, 2022].)
Here, petitioner failed to demonstrate prima facie that respondent did not use the Kingston Avenue apartment as her primary residence. Having made the strategic choice to call Roland as a witness for petitioner, petitioner failed to elicit damning inconsistent testimony, failed to offer evidence to support numerous of the allegations in the Golub notice, and failed to establish that Roland does not maintain a substantial, physical nexus to the Kingston Avenue apartment for actual living purposes. Indeed, the court's inquiry could have ended after Roland's testimony based upon petitioner's agent's admitted lack of personal knowledge of Roland's occupancy of the Kingston Avenue apartment for the two years prior to the expiration of her renewal lease. (See 456, LLC v. Wagstaff, 82 Misc 3d 132[A], 2024 NY Slip Op 50564[U][landlord's only witness did not have personal knowledge of tenant's occupancy of the building].)
CONCLUSION
Life can be complicated, and sometimes not easily explained. "We can move about freely; for good reason, for bad reason, or for no reason at all." (417 E. Realty Assocs. v Ryan, 110 Misc 2d 607, 612 [Special Term, New York County 1981].) Here, through her credible testimony, and the credible testimony of disinterested witnesses, respondent has proven, by a preponderance of the evidence that she never intended to make 5661 Columbia Avenue, Apt. 302, Columbia, MD her primary residence, and that, in fact it never was. As explicated by the Court of Appeals, "In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence, is of no avail." (In re Newcomb's Est., 192 NY 238 [1908].) Roland has developed a set of complicated facts into a narrative that makes sense. The totality of the evidence establishes that during the relevant time period, and beyond, Roland considered 451 Kingston Avenue, Apt. 4C to be her "home" and was "using the subject Brooklyn apartment in an 'ongoing' and 'substantial' manner consistent with physically living at the subject premises." (Id., 2024 NY Slip Op 50564[U], *1.)
Accordingly, it is
ORDERED that this proceeding is DISMISSED; and it is further
ORDERED that judgment shall enter in favor of respondent, NATASHA ROLAND.
This constitutes the Decision and Order of the Court.
Dated: October 27, 2025
Brooklyn, NY
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1:See Golub v Frank, 65 NY2d 900 (1985).

Footnote 2:Petitioner unpersuasively made much of the fact that respondent testified at trial that she never stayed longer than a weekend in MD, but testified during her deposition that she would spend up to a week in MD at times.